[Nos. C043539, C046171. Third Dist. Aug. 31, 2005.]

DELL MERK, INC., Plaintiff, v.
DONALD C. FRANZIA, as Trustee, etc., Defendant and Respondent;
PACIFIC STATE BANK, Intervener and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part I of the Discussion.

■■■■■■■■■■■■■

COUNSEL

Freeman, D'Aiuto, Pierce, Gurev, Keeling & Wolf, Arnold J. Wolf and Coren D. Wong for Intervener and Appellant.

Law Office of Downey Brand, Kevin M. Seibert, Frank R. Perrott and Cassandra M. Ferrannini for Defendant and Respondent.

OPINION

**CANTIL-SAKAUYE, J.**—Pacific State Bank (Bank) intervened in an action between Dell Merk, Inc., a corporation to which it had provided commercial financing, and the Donald C. Franzia 1992 Revocable Trust, Donald C. Franzia, trustee (Franzia). The underlying litigation between Dell Merk and Franzia involved a construction contract dispute. As a secured party, Bank sought payment from Franzia of amounts previously paid by Franzia to Dell Merk as well as monies allegedly still owed and payable by Franzia to Dell Merk.[1] The trial court granted Franzia's motions in limine to exclude all evidence on Bank's two causes of action and entered judgment against Bank. The trial court later granted Franzia attorney fees and costs and entered an amended judgment against Bank including an award of $212,726 in fees and costs.

Bank appeals the judgment and amended judgment entered against it contending the trial court erred in granting Franzia's motion in limine to exclude all evidence on its first cause of action and in ordering Bank to pay attorney fees. Bank claims: 1) Franzia breached its obligation to pay by not making the first progress payment jointly payable to Bank and Dell Merk; 2) because Dell Merk defaulted on the loan prior to June 2000, Bank was entitled to all the proceeds from the first progress payment; and 3) Bank was entitled to any proceeds Franzia still owed to Dell Merk on the construction contract. We shall affirm the judgment.

## FACTUAL BACKGROUND

On March 28, 2000, Dell Merk, Inc., doing business as Uprite Construction, through its sole owner and president Chris Dell Aringa (collectively Dell Merk), entered into a written design-build construction contract with Bobcat Central, through its agent and representative Franzia, for a project known as Bobcat Central—New Facility Newton Road, a heavy equipment showroom (project).

---

[1] Bank also alleged causes of action for fraud and negligent misrepresentation, but demurrers to such causes of action were sustained without leave to amend.

A short time later, on April 14, 2000, Dell Merk entered into a new written construction contract for the project, which purported to "void out the cost plus contract" of March 28, 2000, and substitute a stipulated price for the project. The April 14 contract also changed the name of the owner of the project from Bobcat Central to Franzia. Neither the March 28 nor the April 14 construction contract contained an attorney fees provision.

On April 20, 2000, Dell Merk obtained a $150,000 line of credit (loan) from Bank. To obtain the loan, Dell Merk executed a promissory note (note), a commercial security agreement (security agreement), and a business loan agreement.[2] Dell Merk had previously obtained loans from Bank in 1999, including two previous line of credit loans for $150,000 and one equipment purchase loan for $32,075.

The April 2000 note provided for monthly interest-only payments and then a single balloon payment on April 20, 2001, of the principal amount of the loan plus any accrued interest not yet paid. The note allowed prepayment of all or a portion of the amount owed without penalty. The note was secured, according to its terms, by a security agreement "and an assignment of proceeds in that certain contract dated March 28, 2000 by and between Bobcat Central and Dell Merk[.]" The note included a provision requiring Dell Merk to pay attorney fees and costs incurred by Bank in any collection action upon default.

In the referenced security agreement, Dell Merk granted Bank a security interest in the "collateral to secure the indebtedness." The "collateral" was defined to include "the following specifically described property: ASSIGN-MENT OF PROCEEDS IN THAT CERTAIN CONTRACT DATED MARCH 28, 2000 BY AND BETWEEN BOBCAT CENTRAL AND DELL MERK[.]" In addition, the collateral included "all replacements of and substitutions for any property described above."

Under the security agreement, the parties agreed Dell Merk could collect any of the accounts included in the collateral "[u]ntil otherwise notified by [Bank.]" However, the Bank could "[a]t any time and even though no Event of Default exists" exercise its rights to collect the accounts and "to notify account debtors to make payments directly to [Bank] for application to the indebtedness." By this language Dell Merk and Bank agreed Bank could exercise its statutory right of collection authorized by former section 9502,

---

[2] Franzia objects to the use of loan documents appearing in the clerk's transcript attached to Bank's opposition to its motion in limine to exclude all evidence regarding Bank's first cause of action, as never being properly authenticated in the trial court. Franzia did not raise this objection orally at the argument regarding its motion after the filing of such opposition. Therefore, the objection has been forfeited.

subdivision (1), of the California Uniform Commercial Code (UCC)[3] prior to any default of Dell Merk.

The security agreement also included a provision requiring Dell Merk to pay all of Bank's costs and expenses, including attorney fees "incurred in connection with the enforcement of th[e] Agreement."

Bank exercised its right to notify account debtors to make payments directly to Bank by issuing a notice of security interest (notice) to "Bobcat Central." The notice informed Bobcat Central of Bank's security interest in the contract between Bobcat Central and Dell Merk. The notice stated that as a condition of release of its security interest, all proceeds of such contract were to be paid jointly to Bank and Dell Merk. The proceeds were to be delivered or mailed to Bank. The notice was signed by Mr. Dell Aringa on behalf of Dell Merk, acknowledging disbursements were to be made jointly to it and Bank. Franzia "acknowledge[d] receipt of this Notice to Buyer" on behalf of Bobcat Central on April 20, 2000. Bank alleged it required Bobcat Central to execute such written notice as one of the conditions precedent to approval of Dell Merk's loan.

According to Bank, it gave final approval to the April 2000 loan and filed a financing statement with the California Secretary of State regarding its security interest on April 24, 2000. From May 8, 2000, through October 17, 2000, Dell Merk made monthly interest payments to Bank on the April 2000 note and loan.

On June 14, 2000, Franzia made a first progress payment to Dell Merk in the amount of $274,062.46 for the construction work completed up to that time. On June 15, 2000, Dell Merk made a $20,000 principal only payment to Bank on the April 2000 loan.

Subsequent to the first progress payment, Franzia asked for proof of Dell Merk's payment of subcontractors listed on the first progress payment application. Dell Merk was unable to provide the documentation and Franzia began to receive preliminary notices and stop notices from a number of the subcontractors who had not been paid. Franzia also discovered extensive cracking in the showroom floor and other possible construction defects in the project. Franzia terminated Dell Merk as the general contractor for the project in August 2000.

---

[3] Former section 9502 of the UCC was repealed by Statutes 1999, chapter 991, section 34, operative July 1, 2001. The former section provided in relevant part: *"When so agreed* and in any event on default the secured party is entitled to notify an account debtor or the obligor on an instrument to make payment to him or her whether or not the assignor was theretofore making collections on the collateral, and also to take control of any proceeds to which he or she is entitled under Section 9306." (UCC former § 9502, subd. (1), as amended by Stats. 1998, ch. 932, § 26, italics added; see now UCC, § 9607.)

Approximately two months after Franzia terminated Dell Merk, Dell Merk defaulted on its payment obligation to Bank on October 20, 2000. The principal balance Dell Merk owed to Bank on the April 2000 loan was $130,000. Subsequently, Bank alleged it discovered the March 28, 2000 contract between Bobcat Central and Dell Merk had been voided and replaced with the April 14, 2000 contract between Franzia and Dell Merk. Bank also alleged it subsequently learned of the June 14, 2000 progress payment made by Franzia to Dell Merk.

## PROCEDURAL BACKGROUND

On November 1, 2000, Dell Merk filed a complaint against Franzia. On December 20, 2000, Franzia filed a cross-complaint against Dell Merk.

In January 2001, Bank filed a motion for leave to intervene in the action between Dell Merk and Franzia, alleging it was entitled to amounts still due Dell Merk under the contract based on "its perfected status as an assignee of the proceeds of the subject contract" and entitled to repayment from Franzia of the entire amount of the first progress payment because the check had not been made jointly payable to Bank and Dell Merk. Bank's motion for leave to intervene was granted and on February 22, 2001, Bank filed its complaint in intervention. In its first cause of action Bank alleged Franzia failed to pay Bank in breach of its obligation under former section 9318, subdivision (3), of the UCC[4] and in its second cause of action, Bank requested declaratory relief. In its prayer for relief, Bank asked for, among other things, damages "in an amount exceeding $130,000" "[f]or costs of suit" and "such other relief as the court may deem just and proper." Bank did not expressly request attorney fees.

Shortly before the trial, set to begin in January 2003, Bank, Franzia, and Dell Merk exchanged a number of motions in limine. Franzia included, along with its opposition to Bank's motion in limine, its own in limine motion to exclude all evidence on Bank's first cause of action, breach of the obligation to pay, because it failed to state a cause of action. Essentially, Franzia argued Bank had no damages from any failure of Franzia to make the first progress payment jointly payable to Dell Merk and Bank. Franzia argued at the time of the progress payment, Dell Merk was current on its required, monthly interest payments on the April 2000 loan and Bank had no entitlement to any

---

[4] Former section 9318 of the UCC was repealed by Statutes 1999, chapter 991, section 34, operative July 1, 2001. Subdivision (3) of former section 9318 provided in relevant part: "The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee." (UCC former § 9318, subd. (3), as amended by Stats. 1988, ch. 1368, § 11, pp. 4589–4590; see now UCC, § 9406.)

additional amounts. Franzia also moved in limine to exclude all evidence relating to Bank's second cause of action for declaratory relief and to exclude evidence of Dell Merk's pre-2000 loans with Bank.

Trial began on January 6, 2003. Bank stipulated its potential right to damages from Franzia was limited to that portion of the first progress payment representing payment to Dell Merk, specifically, $144,642 minus 10 percent retention. In light of the stipulation, Bank agreed the trial court should grant Franzia's motion in limine to exclude evidence of Dell Merk's other loans. The trial court ruled Bank's second cause of action for declaratory relief was also "out" given the stipulation.[5] The trial court allowed time for Bank to file a written response to Franzia's motion in limine to exclude all evidence on its first cause of action, breach of the obligation to pay, since such motion had first been raised in Franzia's opposition to Bank's in limine motion. The court tentatively indicated it agreed with Franzia's position. After the filing of Bank's response and further argument, the trial court granted Franzia's dispositive motion to exclude all evidence regarding Bank's first cause of action. Judgment was entered against Bank on its complaint in intervention. Bank filed a notice of appeal.

Franzia filed a motion for attorney fees and a memorandum of costs requesting a total of $295,240.67 from Bank. Franzia contended it was entitled to attorney fees from Bank under the reciprocity provision of Civil Code section 1717 (section 1717) because, based on Bank's security agreement with Dell Merk, Bank would have been entitled to its fees if Bank had prevailed in the litigation against Franzia. Bank opposed the fee motion and moved to strike and tax costs. The trial court granted Franzia's motion for attorney fees and denied the motion to tax costs. It ordered Franzia to provide a breakdown of costs and fees between the Dell Merk case and the Bank case. On January 7, 2004, an amended judgment was entered against Bank, awarding Franzia its attorney fees and costs in the reduced amount of $212,726. Bank filed a second notice of appeal and its appeals were consolidated upon stipulation by this court.

## DISCUSSION

### I.

### The Trial Court's Ruling on Franzia's Motion to Exclude All Evidence on Bank's First Cause of Action[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[5] Bank does not challenge this ruling on appeal.

[*] See footnonte, *ante*, page 443.

## II.

## <u>The Trial Court's Award of Attorney Fees</u>

█ "On appeal this court reviews a determination of the legal basis for an award of attorney fees de novo as a question of law." (*Sessions Payroll Management, Inc. v. Noble Construction Co.* (2000) 84 Cal.App.4th 671, 677 [101 Cal.Rptr.2d 127].)

█ We start with the basic proposition that each party to a lawsuit must pay its own attorney fees except where a statute or contract provides otherwise. (Code Civ. Proc., § 1021.) Where there is a contractual attorney fees provision, section 1717, subdivision (a) provides, "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

Section 1717 was enacted to "avoid the perceived unfairness of one-sided attorney fee provisions . . . ." (*International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1182 [101 Cal.Rptr.2d 532].) "Its purposes require section 1717 be interpreted to further provide a reciprocal remedy for a nonsignatory defendant, sued on a contract as if he were a party to it, when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128 [158 Cal.Rptr. 1, 599 P.2d 83].)

In this case, neither the March nor the April construction contract, between Dell Merk and Franzia (Bobcat Central), contained an attorney fees clause. However, both the note and the security agreement executed by Dell Merk for the loan from Bank contain an attorney fees clause. The note requires Dell Merk to pay attorney fees incurred by Bank in any collection upon default. The security agreement required Dell Merk to pay Bank any attorney fees it "incurred in connection with the enforcement of th[e] Agreement."

After judgment was entered against Bank, Franzia, a nonsignatory to both the note and security agreement, filed a motion for attorney fees contending it was entitled to fees from Bank under the reciprocity provision of section

1717 because Bank would have been entitled to its fees if it had prevailed in the litigation against Franzia. The trial court granted Franzia its attorney fees and costs in the amount of $212,726.

We conclude Franzia was entitled to attorney fees and costs for its defense of Bank's claim of breach of the obligation to pay for failure to make the first progress payment jointly payable to Dell Merk and Bank. Since Bank only challenges Franzia's entitlement to its fees and not the amount of the award and since it appears the trial court reduced the originally requested fees to eliminate fees solely attributable to Franzia's action against Dell Merk, we shall affirm the amended judgment.

■  "[I]n cases involving nonsignatories to a contract with an attorney fee provision, the following rule may be distilled from the applicable cases: A party is entitled to recover its attorney fees pursuant to a contractual provision only when the party would have been liable for the fees of the opposing party if the opposing party had prevailed." (*Real Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, 382 [30 Cal.Rptr.2d 536] [involving a nonsignatory plaintiff suing a signatory defendant in an action on the contract].) That is, Franzia is entitled to recover its attorney fees only if it would have been liable for Bank's attorney fees if Bank had prevailed. This requires an examination of the claims made by Bank in its complaint in intervention.

A review of the record reflects Bank intervened in the action between Dell Merk and Franzia in order to assert two claims against Franzia. Bank claimed it was entitled to repayment from Franzia of the entire amount of the first progress payment because 1) Franzia failed to make the payment jointly payable to Bank and Dell Merk after it received notification from Bank to do so, and 2) Bank was entitled to any amounts still due Dell Merk under the Dell Merk/Franzia contract based on "its perfected status as an assignee of the proceeds of the subject contract."

A. *Franzia's Defense of Bank's Claim as an Assignee to the Construction Contract Between Franzia and Dell Merk*

In asserting its claim to any amounts still due Dell Merk under the Dell Merk/Franzia contract, Bank, as the assignee, stepped into the shoes of Dell Merk based on its security interest and assignment in the proceeds of that contract. The case of *California Wholesale Material Supply, Inc. v. Norm Wilson & Sons, Inc.* (2002) 96 Cal.App.4th 598 [117 Cal.Rptr.2d 390] (*California Wholesale*) is instructive.

In *California Wholesale* a materials supplier (plaintiff) took a security interest in the accounts receivable of a drywall subcontractor. After the subcontractor defaulted on its obligation to the plaintiff, the plaintiff sought to have the subcontractor's general contractor (defendant) pay directly to it any money the defendant still owed to the subcontractor. When the defendant did not do so, the plaintiff sued the defendant alleging a cause of action for damages for breach of UCC former section 9502. Judgment was entered against the plaintiff after it was determined the defendant had properly paid the amount still due the subcontractor to the subcontractor's bank lender, who had a prior perfected security interest in the subcontractor's accounts receivable. The trial court denied the defendant's motion for attorney fees. (*California Wholesale, supra*, 96 Cal.App.4th at pp. 601–603.)

The appellate court reversed the trial court's denial of attorney fees. (*California Wholesale, supra*, 96 Cal.App.4th at p. 611.) The court found the issue litigated by the parties in this action was which party had the right to payment of the money earned by the subcontractor under the subcontract with the defendant. The plaintiff "sought in its complaint to enforce its *security interest* in [subcontractor's] accounts receivable and contract rights pursuant to the UCC, and as pled in the complaint, [the plaintiff] was also the 'assignee' of [subcontractor's] accounts receivable and contract rights." (*Id.* at p. 605.) Irrespective of the fact the plaintiff framed its complaint as an action under the UCC, the parties necessarily litigated the money due the subcontractor under the subcontract with the defendant. The subcontractor's subcontract with the defendant contained an attorney fees provision. As the subcontractor's assignee, the plaintiff stepped into the shoes of the subcontractor. As the prevailing party in the collection action, the defendant was entitled to invoke the attorney fees provision in the subcontract against the plaintiff. (96 Cal.App.4th at pp. 605–606.) The plaintiff was liable for those fees even though it was a nonsignatory to the subcontract containing the fees provision. (*Id.* at p. 608.)

Bank claims identical facts exist in this case and that *California Wholesale* stands for the proposition that "[a]n attorney's fee claim arising out of an action between an account assignee (i.e., [Bank]) and an account debtor (i.e., [Franzia]) can be predicated only on an attorney's fee provision in the contract between the account assignor (i.e., Dell Merk) and the account debtor." Franzia responds that *California Wholesale* did not consider and does not hold a fee claim can only be brought against a secured party and assignee if the fee provision appears in the agreement between the account debtor and account assignor.

*California Wholesale, supra,* 96 Cal.App.4th 598, demonstrates the necessity for a careful assessment of the substantive nature of the action brought by the plaintiff. In *California Wholesale* the plaintiff, a secured party and assignee, sued the defendant, the account debtor, for proceeds due to the assignor subcontractor. Even though the plaintiff framed its complaint under the UCC, essentially the plaintiff was suing on the subcontract between the account debtor and the assignor. The same is partially true here. One of the two reasons Bank intervened in the action between Dell Merk and Franzia was to assert its rights to any proceeds determined to be due to Dell Merk from Franzia. Such portion of Bank's action was based on the contract, as an assignee, between Dell Merk and Franzia. As there was no attorney fees provision in the contract between Dell Merk and Franzia, Bank was not entitled to claim attorney fees for its action on the Dell Merk/Franzia contract. And Bank is not liable for Franzia's fees in defending that portion of Bank's action. (96 Cal.App.4th 598.)

We agree with Franzia that *California Wholesale, supra,* 96 Cal.App.4th 598, did not consider what the effect would have been of a fee provision in the security agreement between the plaintiff and the subcontractor, and so is not authority on such question. Franzia contends that under the principles of Civil Code section 1642, Bank's action against it for the proceeds from the Dell Merk/Franzia contract was also an action on the security agreement. However, under the principles of Civil Code section 1642, we disagree.

■ Civil Code section 1642 provides: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." That is, "several papers relating to the same subject matter and executed as parts of substantially one transaction, are to be construed together as one contract." (*Nevin v. Salk* (1975) 45 Cal.App.3d 331, 338 [119 Cal.Rptr. 370]; accord, *BMP Property Development v. Melvin* (1988) 198 Cal.App.3d 526, 531 [243 Cal.Rptr. 715].)

The construction contract for the project between Dell Merk and Franzia and the various documents comprising the loan contract and the security agreement between Dell Merk and Bank are not between the same parties and do not relate to the same subject matter pursuant to Civil Code section 1642. Nor do they comprise one transaction. Bank's action on the Dell Merk/Franzia construction contract as Dell Merk's assignee was not an action on the security agreement within the meaning of Civil Code section 1642.

Nor were fees authorized under the reasoning of *Saucedo v. Mercury Sav. & Loan Assn.* (1980) 111 Cal.App.3d 309 [168 Cal.Rptr. 552] and *Wilhite v. Callihan* (1982) 135 Cal.App.3d 295 [185 Cal.Rptr. 215]. These cases, involving a nonsignatory plaintiff, arise in the peculiar context of an action to prevent foreclosure for nonpayment of a real property promissory note secured by a deed of trust. In such situation, there was a practical reason to apply section 1717 to the nonassuming grantee's action to enjoin foreclosure because a nonassuming grantee of the property wanting to protect his or her equity in the property would have to pay, despite no contractual liability, the beneficiary's fees as a condition of any redemption of the property. (*Saucedo, supra*, at pp. 314–315; *Wilhite, supra*, at pp. 301–302.) No similar situation is presented here.

■   We conclude Bank would not have been entitled to fees on the portion of its complaint in intervention, as an assignee seeking payment of any remaining proceeds due to Dell Merk from Franzia on the project contract. Therefore, Franzia is not entitled under the reciprocity provision of section 1717 to its fees in defending such claim on the contract between Dell Merk and Franzia.

B.   *Franzia's Defense of Bank's Claim Franzia Failed to Make the First Progress Payment Jointly Payable to Dell Merk and Bank*

We now consider whether Franzia was entitled to attorney fees based on its defense of Bank's other claim seeking repayment of the first progress payment because Franzia failed to make the payment jointly payable to Bank and Dell Merk after it received notification from Bank to do so. This portion of Bank's action was not based on the Dell Merk/Franzia contract,[11] but was a separate claim arising from Bank's exercise of its rights under the security agreement to notify Franzia to jointly pay Bank and Dell Merk. Bank alleged Franzia, although a nonsignatory to the security agreement, breached its obligation to pay Bank after such notification. Although it was pled as an action under the UCC and Bank did not pray expressly for attorney fees,[12]

---

[11] *California Wholesale, supra*, 96 Cal.App.4th 598, does not limit the basis for an attorney fees claim to the contract between the account debtor and the assignor if the claim asserted by a secured party and assignee is not based on that contract.

[12] Bank's complaint, first amended complaint, and second amended complaint alleged, "Franzia failed and refused, and continues to fail and refuse, to make payment to Bank in breach of its obligation under Section 9318, subdivision (3), of Article 9 of the California Uniform Commercial Code." The original complaint alleged damages in excess of $130,000. The first amended complaint and second amended complaint sought increased damages in excess of $274,062. In none of the complaints did Bank pray for attorney fees.

the question is whether Franzia's failure to make the first progress payment jointly payable to Dell Merk and Bank was nevertheless an action "on the contract" for purposes of section 1717. If Bank would have been legally entitled to fees if it had prevailed, Franzia would be entitled to its fees for defending Bank's action when Bank lost. (*Real Property Services Corp. v. City of Pasadena, supra*, 25 Cal.App.4th 375, 382.)

**(6)** The Supreme Court has concluded that section 1717 provides a reciprocal remedy for a nonsignatory defendant, "sued on a contract as if he were a party to it," if the signatory would "clearly be entitled to attorneys' fees should he prevail in enforcing the contractual obligation against the [nonsignatory]." (*Reynolds Metals Co. v. Alperson, supra*, 25 Cal.3d at p. 128.) Read literally, the requirements of *Reynolds* are met: Bank, in an action on a contract, sought damages from Franzia, a nonsignatory defendant. Had Bank established that Franzia was bound by the contract, it would have been entitled to attorney fees consistent with the terms of the security agreement. The fact that Bank did not request fees is inconsequential.[13]

The fact that Bank's contractual claim was baseless does not matter. It is nonetheless obligated, by virtue of section 1717, to pay fees to the party that ultimately prevailed, Franzia.

Moreover, California courts liberally construe the term " ' "on a contract" ' " as used within section 1717. (*California Wholesale, supra*, 96 Cal.App.4th 598, 605.) As long as the action "involve[s]" a contract it is " 'on [the] contract' " within the meaning of section 1717. (*Care Constr., Inc. v. Century Convalescent Centers, Inc.* (1976) 54 Cal.App.3d 701, 706 [126 Cal.Rptr. 761]; cf. *Leaf v. Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371, 378–379 [120 Cal.Rptr. 749].)

Former section 9318, subdivision (3), of the UCC authorized an account debtor to continue paying the assignor until it received notification of the assignment and was told payments were to be made to the secured party/assignee. (UCC former § 9318, subd. (3), as amended by Stats. 1988, ch. 1368, § 11, pp. 4589–4590, and repealed by Stats. 1999, ch. 991, § 34; see now UCC, § 9406.) Former section 9502 of the UCC authorized the secured party to give such notification to the account debtor "[w]hen so agreed and in any

---

[13] "It is now settled that a party is entitled to attorney fees under section 1717 'even when the party prevails on grounds the contract is inapplicable, invalid, unenforceable or nonexistent, if the other party would have been entitled to attorney's fees had it prevailed.' [Citations.]" (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 870 [39 Cal.Rptr.2d 824, 891 P.2d 804].)

event on default." (UCC former § 9502, subd. (1), as amended by Stats. 1998, ch. 932, § 26, and repealed by Stats. 1999, ch. 991, § 34; see now UCC, § 9607.) Consequently, at the time of the security agreement involved here, the right to collect accounts receivable from an account debtor after default could be based on statute or could be based on both statute and contract. Prior to default, however, the right to collect accounts receivable existed only if contractually agreed upon by the parties. Bank and Dell Merk included such a contractual agreement in the security agreement in this case.[14] Bank exercised this contractual right to collect accounts receivable prior to default by obtaining a signed notice of security interest from Bobcat Central/Franzia, directing all proceeds be paid jointly to Dell Merk and Bank.

Subsequently Bank sued Franzia for its failure to make the first progress payment jointly payable to Bank and Dell Merk. As Bank was only entitled to require joint payment of the progress payment predefault because of the security agreement containing the contractual agreement for such collection right, its action necessarily involved the security agreement containing such right.

Accordingly, Bank's complaint contained numerous allegations regarding the terms of its note, security agreement and business loan documents and the notice of security interest provided to Franzia. In resolving Bank's claims the terms of the note, security agreement, business loan and notice of security interest were necessarily interpreted, as discussed in part I.B., *ante*. We conclude Bank's claim to repayment of the first progress payment was an action "on the contract," the security agreement, within the meaning of section 1717. Franzia was entitled to an award of attorney fees for successfully defending Bank's contractual claim regarding the first progress payment.

The record shows the trial court ordered Franzia to provide it a breakdown of its fees and costs between the Dell Merk case and the Bank's case. Thereafter, the trial court awarded a reduced amount of fees and costs. The natural inference is the trial court excluded amounts solely attributable to Franzia's prosecution and defense of the construction dispute with Dell Merk. Bank raises no challenge on appeal to the reduced amount of fees awarded by the trial court.

---

[14] "GRANTORS RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS. [A]t any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the indebtedness."

## DISPOSITION

The judgment and amended judgment are affirmed. Costs on appeal are awarded to respondent. (Cal. Rules of Court, rule 27(a).)

Raye, Acting P. J., and Hull, J., concurred.

A petition for a rehearing was denied September 30, 2005, and appellant's petition for review by the Supreme Court was denied December 14, 2005.