Filed 1/3/24  Elusive 8307 v. Canterman CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ELUSIVE 8307, LLC, | B321096 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC719944) |
| v. | |
| MEREK CANTERMAN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lia R. Martin, Judge.  Reversed and remanded.

Christensen Law and Robert J. Christensen for Defendant and Appellant.

Hennelly & Grossfeld, Ronald K. Giller for Plaintiff and Respondent.

This is the second appeal arising out of a dispute between plaintiff Elusive 8307, LLC and defendant Marek Canterman, who own adjacent residential properties. In 2004, the prior owners of the properties entered into a settlement agreement granting an easement to Elusive over a portion of Canterman's property (the Agreement). Elusive later filed suit, claiming that the parties intended a broader easement than that reflected in the Agreement and seeking declaratory relief. The trial court granted Canterman's motion for judgment after trial because the Agreement contained a release of all future easement claims. A different panel of this court affirmed the judgment.

Canterman moved for attorney fees as the prevailing party, based on an attorney fee provision in the Agreement. The trial court denied the motion, finding that the action did not arise from a contract and that Canterman was not entitled to attorney fees under the reciprocity principal in Civil Code section 1717.[1] On appeal, Canterman argues that the trial court erred in denying his motion for attorney fees. We agree that the court erred and therefore reverse.

## FACTUAL AND PROCEDURAL HISTORY

The underlying facts are detailed in this court's prior appellate opinion, *Elusive 8307, LLC v. Marek Canterman* (May 1, 2023, No. B317164) (nonpub. opn.). We summarize them here as relevant to the attorney fee issue presented.

## I. The Agreement

Canterman owns real property in Los Angeles (the Canterman Property). Elusive owns two contiguous pieces of real property directly to the east of the Canterman Property (8307 Elusive Drive and 8333 Elusive Drive; collectively, the Elusive Properties). From a public street, Elusive accesses the Elusive Properties by driving on a paved road that is part of the Canterman Property (the Paved Road), and then turning into a dirt driveway that is also part of the Canterman Property (the Dirt Driveway). According to Elusive, this is the only means of accessing its property by car.

---

[1] All further statutory references are to the Civil Code unless otherwise specified.

In September 2003, Walter Altmann (who owned the Elusive Properties at the time) sued Marian Afurong (who owned the Canterman Property at the time). The complaint sought an easement over "a dirt road which connects Rugby Place, a future street and Plaintiff's home."[2] A legal description of the easement was included.

Altmann and Afurong settled the lawsuit in 2004 by entering into the Agreement, with Altmann as "Grantee" and Afurong as "Grantor." The Agreement recited that Altmann had been "using a dirt road to access his property" and now sought an access easement for ingress and egress "only along the currently existing dirt driveway on" the Canterman Property. The Agreement provided that Afurong was granting Altmann an easement for ingress and egress "only to the following portion of the [Canterman] Property," and then listed the same legal description contained in Altmann's complaint, which did not include the Paved Road. In exchange, Altmann agreed to pay Afurong $1,000 and to "be solely responsible for the maintenance of the Easement Area at his sole cost and expense." Paragraph nine of the Agreement, titled "Final Settlement of All Disputes," provided that "[t]his Agreement shall be a final settlement between the parties with respect to any rights [Altmann] may have to the adverse possession or to any easement, whether by prescription, necessity or otherwise, to or over any portion of the [Canterman] Property. [Altmann] shall not claim, bring any claim or pursue any claim for . . . any easement to or over the [Canterman] Property."

The Agreement also contained an integration clause stating that it "constitutes the entire agreement between [Afurong] and [Altmann] relating to the above easement." The clause further stated that any amendment to the agreement had to be "in writing and signed by Grantor and Grantee." The Agreement proclaimed itself "binding on both parties hereto and for their respective benefit and shall also be binding on the heirs, executors, administrators, representatives, attorneys, counsel, successors, and the assigns of either respective party hereto."

---

[2]     Rugby Place is the public street that can be accessed from the Paved Road (which, at the time of the Altmann lawsuit, was unpaved). The Paved Road is part of a future street easement benefiting the city of Los Angeles.

3

Paragraph 11 of the Agreement contained an attorney fees provision. Pursuant to that provision, "[i]f any legal action or proceeding arising out of or relating to this Agreement [is] brought by either party to this Agreement, the prevailing party shall be entitled to receive from the other party...the reasonable attorney's fees . . . incurred in the action or proceeding by the prevailing party."

## II. Subsequent Owners of the Properties

### A. The Canterman Property

In April 2004, Afurong transferred the Canterman Property by grant deed to Anita and Azadeh Famili. In June 2010, the Familis transferred the Canterman Property by grant deed to Canterman.

### B. The Elusive Properties

In 2012, Altmann hired real estate agent Shawn Kormondy to help him sell the Elusive Properties. Kormondy also represented Afurong in a number of transactions and discussed the Canterman Property with her. At the time, Altmann told Kormondy that Altmann had a "legal easement" over the Canterman Property from Rugby Place to the Elusive Properties.

Kormondy later changed sides in the transaction, representing Verono LLC, in the purchase of the Elusive Properties from Altmann. In October 2014, Altmann recorded a deed transferring the Elusive Properties to Verono. Seventeen days later, Verono transferred the Elusive Properties by grant deed to Elusive, a limited liability company composed of the same parties as Verono. Before, and during, the sale from Altmann to Verono and the transfer to Elusive, there was no evidence to suggest that Kormondy or anyone else at Verono or Elusive did any due diligence to confirm the existence of the easement or to ensure that there was legal access to the Elusive Properties.

Around 2016, Kormondy became the managing member of Elusive. At about the same time, when searching court records for the easement Altmann had claimed existed, Kormondy discovered the Agreement. At that time, he had a title company plot the legal description contained in the agreement and learned that it encompassed only the Dirt Driveway but not the Paved Road.

4

## III.   Elusive's Lawsuit
### A.   Complaints

In August 2018, Elusive filed a lawsuit against Canterman alleging claims for declaratory relief for a prescriptive easement, and, in the alternative, an equitable easement.  Elusive alleged that it owned 8307 Elusive and also owned the easement set forth in the Agreement.  Elusive attached a copy of the Agreement to the complaint and fully incorporated it by reference, alleging that the Agreement conveyed the easement from Canterman's "predecessor-in-interest" Afurong to Elusive's "predecessor-in-interest," Altmann.  The complaint further alleged that the intent of the Agreement was to grant "complete easement access" to the owner of 8307 Elusive over the Canterman Property, and that the easement was to "benefit and burden the successor owners of both [Elusive's] Property and [Canterman's] Property in perpetuity."

Elusive filed a first amended complaint (FAC) in December 2018, alleging that the Agreement granted an easement from the eastern property line of 8307 Elusive to the "northern boundary of the existing paved community driveway."  Elusive further alleged that Altmann believed "a recorded future street easement would serve as the easement from where the existing community driveway ends to where the 2004 easement leads to [8307 Elusive's] property line."  The FAC again attached a copy of the Agreement and incorporated it by reference.  It contained the same allegations as the original complaint regarding the intent of the 2004 Agreement.

In March 2019, Elusive filed its operative complaint, the second amended complaint (SAC).  The SAC added an allegation that Elusive owned 8333 Elusive.  It also alleged that the previous owners "attempted to record an easement from [the] Eastern property line of 8307 Elusive Drive to the northern boundary of the existing paved community driveway," but that the "2004 attempted easement is void."[3]  As with the prior two complaints, the SAC attached a copy of the Agreement and incorporated it by reference.  The SAC also continued to refer to Afurong and Altmann as "predecessors-in-

---

[3]   As we discuss further below, Canterman presented evidence that Elusive later withdrew its contention that the 2004 Agreement was void.

5

interest" to the current owners and repeated the allegations regarding the intent of the Agreement. The SAC sought a judicial determination "so that [Elusive] may ascertain its rights and duties with respect to the Complete Easement Area," which it described as the area necessary to provide complete access to the Elusive Properties.

### B. Trial

The trial court conducted a thirteen-day bench trial. Altmann's son testified that while he and his parents lived at 8307 Elusive, they openly accessed the property by using the Paved Road and the Dirt Driveway. Kormondy testified about his involvement in the sale of the Elusive Properties. Canterman testified that he installed a gate separating Rugby Place and the Paved Road after he purchased the Canterman Property in 2010 or 2011. Canterman gave Altmann "clickers" to open the gate and provided him with an access code. Elusive also had a "clicker" to open the gate. A member of the Famili family testified that they understood that Altmann was using the Paved Road with their permission.

### C. Judgment

Canterman orally moved for judgment under Code of Civil Procedure section 631.8 at the close of Elusive's case. The trial court declined to render judgment until the close of all evidence. Canterman renewed the motion after both parties rested. Canterman sought judgment on the grounds that the Agreement was a covenant that runs with the land, was binding on Elusive, and barred Elusive from seeking any easements outside of the Agreement. Canterman also argued that Elusive failed to prove the elements of its claims for prescriptive and equitable easement. Elusive opposed the motion for judgment, arguing that the Agreement did not run with the land because the Elusive Properties were not particularly described in the Agreement and did not bind it as a successive owner.

In a written order filed in July 2021, the trial court granted Canterman's motion for judgment. It found that Elusive "did not meet its burden to prove [the Agreement] is not valid." The court found that under the Agreement, Afurong granted Altmann an easement to use the Dirt Driveway, and in exchange, Altmann agreed not to "bring or pursue any claim" for any other easement on the Canterman Property. The court

6

rejected Elusive's argument that the Agreement did not run with the land. The court also found that as Altmann's successor, Elusive continued to benefit from the Agreement because it used the easement granted therein, but did "not want to accept the burden of the covenant." Thus, even if the Agreement was not a covenant that ran with the land, Elusive was still bound by it.

The court found that the easement in the Agreement did not include the Paved Road, and that Elusive failed to prove that the parties to the Agreement intended otherwise. In support of its conclusion, the court cited the provision in the Agreement requiring any amendment to be in a signed writing and the fact that Elusive did not call Afurong as a witness.

The trial court additionally found that Elusive was not entitled to a prescriptive easement because it failed to prove its use of the Paved Road was hostile. Moreover, Elusive had only owned the properties for four years when it filed suit, so it could not show the requisite five years of hostile use.

### D. First Appeal

Elusive appealed from the judgment and subsequent denial of its motion for new trial. A different panel of this court affirmed, concluding that substantial evidence supported the trial court's express finding that Elusive did not meet its burden to demonstrate an entitlement to a prescriptive easement and the trial court's implied finding that Elusive was not entitled to an equitable easement. The court did not reach the parties' arguments regarding whether the Agreement and its release of further claims to easements created a covenant that would run with the land and bind Elusive.

## IV. Motion for Attorney Fees

In October 2021, Canterman filed a motion for reasonable attorney fees pursuant to section 1717. Section 1717 allows a prevailing party to recover reasonable attorney fees incurred in "any action on a contract," where the contract specifically provides for the award of such fees to the prevailing party. Canterman argued that the action was "on a contract" within the meaning of section 1717 because it involved the Agreement and as the prevailing party he was entitled to attorney fees under the Agreement. He also argued that he and Elusive were successors-in-interest to the signatory parties to the Agreement, and therefore were bound by the Agreement,

including its attorney fee provision. Canterman sought $353,682 in attorney fees.

Elusive opposed. It argued that its action was not "on a contract" because Elusive alleged only "real property claims that were directed at seeking an easement by operation of law." Elusive contended that it did not seek to enforce the Agreement due to its defects and the fact that it did not give Elusive the necessary access across both the Paved Road and the Dirt Driveway. In addition, Elusive argued that Canterman had asserted throughout the litigation that the Agreement was void, and that the agreement "had no role" in the case until Canterman moved for judgment based on the agreement. Finally, Elusive argued that neither it nor Canterman were signatories to the Agreement and therefore could not enforce the attorney fee provision.

In reply, Canterman asserted that he and Elusive were bound by the attorney fees provision because they were "stand[ing] in the shoes" of the parties to the Agreement.

Following a hearing, the court issued a written order on February 9, 2022. The court denied Canterman's motion for attorney fees, finding that "the instant case is distinguishable from *Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010,[4]and attorney fees would not have been awarded to [Elusive] had [Elusive] been the prevailing party." The court further found that Elusive "did not bring this action to enforce the terms of the 2004 Settlement Agreement or allege that [Canterman] had breached its terms. Rather, [Elusive] contended that the 2004 Settlement Agreement had not achieved the easement the parties must have intended.[5]

Canterman timely appealed.

_____

[4] Canterman does not dispute that *Apex* is factually distinguishable. As his counsel explained to the trial court at the hearing on attorney fees, he cited the case in his motion for the "legal proposition" that a nonsignatory could be bound when standing in the shoes of a party, not as factually analogous, (See *Apex LLC v. Korusfood.com, supra*, 222 Cal.App.4th at pp. 1017-1018 [nonsignatory bound by attorney fees provision because it was the same entity as a contracting party].)

[5] In the same order, the court denied Elusive's motion to strike or tax costs. That ruling is not at issue in this appeal.

**DISCUSSION**

Canterman contends the trial court erred in denying his motion for attorney fees. He challenges the court's findings that the action was not "on a contract" and that there was no reciprocal right to fees. We agree that the trial court erred as to both findings.

## I. Legal Standards

"Each party to a lawsuit must pay his or her own attorney fees except where a statute or contract provides otherwise." (*Cargill, Inc. v. Souza* (2011) 201 Cal.App.4th 962, 966 (*Cargill*).) Attorney fees authorized by contract are recoverable as costs by the party prevailing in the action. (Code Civ. Proc., §§ 1032, subd. (b), 1033.5, subd. (a)(10)(A); see also *Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109.) Thus, in analyzing a request for contractual attorney fees, the court must "'determine whether the parties entered an agreement for the payment of attorney fees, and if so, the scope of the attorney fee agreement.' [Citation.] This determination requires us to apply traditional rules of contract interpretation." (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 752 (*Mountain Air*), citing *Santisas v. Goodin* (1998) 17 Cal.4th 599, 608.)

On appeal, "a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo." (*Mountain Air, supra,* 3 Cal.5th at p. 751; see also *Cullen v. Corwin* (2012) 206 Cal.App.4th 1074, 1078; *Cargill, supra*, 201 Cal.App.4th at p. 966.) We interpret a contract de novo if the interpretation does not turn on the credibility of extrinsic evidence. (*City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 238; *Kalai v. Gray* (2003) 109 Cal.App.4th 768, 777.) To the extent the trial court resolved a disputed factual issue, we determine whether substantial evidence supports the court's findings. (*Cullen v. Corwin, supra*, 206 Cal.App.4th at p. 1078; *Carpenter & Zuckerman, LLP v. Cohen* (2011) 195 Cal.App.4th 373, 378.)

## II. Action on a Contract

Canterman sought attorney fees as the prevailing party pursuant to section 1717. Pursuant to section 1717, a prevailing party is entitled to reasonable attorney fees incurred "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties

9

or to the prevailing party." The parties here do not dispute that Canterman was the prevailing party in this action. At issue is whether Elusive's action was "on a contract" within the meaning of the statute. Elusive argues it was not, asserting that its claims were for an easement rather than an action to enforce the Agreement.

"California courts liberally construe the term 'on a contract' as used within section 1717. As long as the action 'involve[s]' a contract it is 'on [the] contract' within the meaning of [s]ection 1717." (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894 (*Blickman*), quoting *Dell Merk, Inc. v. Franzia* (2005) 132 Cal.App.4th 443, 455; see also *Care Constr., Inc. v. Century Convalescent Centers, Inc.* (1976) 54 Cal.App.3d 701, 706 ["'as long as the action here involved a contract it was "on a contract" and within Civil Code, section 1717'"].)

"It is difficult to draw definitively from case law any general rule regarding what actions and causes of action will be deemed to be 'on a contract' for purposes of [section] 1717." (*Hyduke's Valley Motors v. Lobel Financial Corp.* (2010) 189 Cal.App.4th 430, 435 (*Hyduke's*).) "Among the relevant factors are 'the pleaded theories of recovery, the theories asserted and the evidence produced at trial, if any, and also any additional evidence submitted on the motion in order to identify the legal basis of the prevailing party's recovery.'" (*Ibid*., quoting *Boyd v. Oscar Fisher Co.* (1989) 210 Cal.App.3d 368, 377; see also *Mountain Air*, *supra*, 3 Cal.5th at pp. 760–761 [courts may consider pleaded theories of recovery and the evidence produced at trial to determine "whether a claim on which attorney fees are incurred is within the scope of a fees provision"].) As summarized by the court in *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 241–242, "An action (or cause of action) is 'on a contract' for purposes of section 1717 if (1) the action . . . 'involves' an agreement, in the sense that the action ... arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement, and (2) the agreement contains an attorney fees clause."

Elusive argues that the action is not on a contract because its claims were for a prescriptive or equitable easement, and it "did not bring this action

10

to enforce the 2004 Agreement or allege a breach of it." This reads the requirements of section 1717 too narrowly. "In determining whether an action is 'on the contract' under section 1717, the proper focus is not on the nature of the remedy, but on the basis of the cause of action." (*Cussler v. Crusader Entertainment, LLC* (2012) 212 Cal.App.4th 356, 365–366 (*Cussler*), quoting *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 347 (*Kachlon*).) For example, a declaratory relief cause of action seeking interpretation of a contract is "on the contract" within the meaning of the statute. (*Cussler, supra*, 212 Cal.App.4th at p. 366, citing *Kachlon, supra*, 168 Cal.App.4th at p. 348; see also *Milman v. Shukhat* (1994) 22 Cal.App.4th 538, 545 ["section 1717 does apply, even though the relief sought by respondents was of a declaratory nature"].)

Here, Elusive's action involved the Agreement, as it sought to interpret the agreement as part of a determination of its rights to the claimed easement. Elusive's contention that it "sought an easement without regard to the terms of the 2004 Agreement" belies its own pleadings in this matter. Elusive's initial complaint and FAC referenced and attached the Agreement, alleged that Elusive owned the easement pursuant to the Agreement, and further alleged that the intent of the Agreement was to grant Elusive "complete easement access." Although Elusive altered its claims in the SAC to allege on information and belief that the Agreement was void,[6] Elusive nevertheless continued to reference and attach the Agreement, and also sought a judicial determination of Elusive's "rights and duties with respect to the Complete Easement Area." After filing the SAC, Elusive's counsel argued that the Agreement was relevant to the lawsuit and gave Canterman "formal notice" that Elusive was withdrawing its allegation that the Agreement was void. In addition, the Agreement was introduced as an exhibit at trial and Elusive's counsel presented argument during trial regarding the intent of the parties to the Agreement. Elusive's claims thus sought the court's interpretation of the Agreement and findings regarding what the parties

---

[6] To the extent this allegation was not later withdrawn, the court may disregard any allegations inconsistent with prior pleadings. (See, e.g., *Deveny v. Entropin, Inc.* (2006)139 Cal.App.4th 408, 425, fn. omitted.)

11

intended when entering into that Agreement.  As such, the action was "on a contract" and the trial court erred in concluding to the contrary.

## III.    Nonsignatory's Right to Fees

Canterman claims the trial court also erred in denying his motion for attorney fees because he failed to show the right to recovery was reciprocal, that is, that Elusive would have been entitled to recover fees had it prevailed on its claims.  "[I]n cases involving nonsignatories to a contract with an attorney fee provision, . . . [a] party is entitled to recover its attorney fees pursuant to a contractual provision only when the party would have been liable for the fees of the opposing party if the opposing party had prevailed." (*Dell Merk, Inc. v. Franzia* (2005) 132 Cal.App.4th 443, 451, quoting *Real Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, 382 (*Real Property*); see also *Sessions Payroll Management, Inc. v. Noble Construction Co.* (2000) 84 Cal.App.4th 671, 679 (*Sessions*).)

This rule is generally applied where one party is a signatory to a contract but the other is not, in line with the reciprocity principals under section 1717.  (See *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128 ["Section 1717 was enacted to establish mutuality of remedy where [a] contractual provision makes recovery of attorney's fees available for only one party . . . and to prevent oppressive use of one-sided attorney's fees provisions."]; see also *ibid.* [signatory plaintiff against nonsignatory defendants; *Real Property, supra,* 25 Cal.App.4th at p. 379 [nonsignatory plaintiff against signatory defendant].)  Here, *neither* Canterman nor Elusive were signatories to the Agreement.  As such, the issue is not whether the contract was one-sided, but whether as nonsignatories Canterman and Elusive were included in the scope of the attorney fee provision.

A nonsignatory will be bound by an attorney fees provision in a contract when the nonsignatory party "'stands in the shoes of a party to the contract.'"  (*Cargill, Inc. v. Souza* (2011) 201 Cal.App.4th 962, 966, quoting *Blickman, supra*, 162 Cal.App.4th 858, 897.)  Canterman contends that he and Elusive are bound by the Agreement as successors-in-interest. Elusive counters that the attorney fee provision applies only to parties to the Agreement.

12

As an initial matter, we reject Elusive's contention that Canterman forfeited this issue by failing to raise it below. Elusive's assertion of forfeiture is puzzling, as Elusive also recognizes that the trial court considered and ruled on whether Elusive would be entitled to fees had it prevailed. Moreover, Canterman specifically argued in his reply brief in support of his motion for attorney fees that Elusive was bound by the Agreement as a successor-in-interest and cited case law regarding the mutuality requirement under section 1717.

Substantively, Elusive contends it would not have been entitled to recover fees under the attorney fee provision of the Agreement because it "did not allege any claims to enforce the 2004 Agreement or assert a breach of it." We have already concluded that the action was "on the contract" such that Canterman could recover attorney fees pursuant to the Agreement; the same conclusion would apply had Elusive prevailed. Moreover, the language of the attorney fee provision itself does not exclude the type of action alleged here. To the contrary, the broad provision allows fees for "any legal action or proceeding arising out of or relating to this Agreement brought by either party to this Agreement."

Elusive also contends that the attorney fees provision does not apply because neither Elusive nor Canterman are parties to the Agreement. Canterman argues that he and Elusive stand in the shoes of Afurong and Altmann, respectively, as successors-in-interest and owners of the relevant properties. In granting judgment for Canterman, the trial court previously found that Elusive was bound by the Agreement as Altmann's successor. This court did not disturb that finding in the prior appeal. Canterman also points out that Elusive repeatedly alleged in all versions of its complaint that Altmann and Afurong were the "predecessor[s]-in-interest" to the current parties. Elusive also alleged that the intent of the Agreement was to grant easement access "to the owner of [Elusive's] Property," and for the "Easement Area . . . to benefit and burden the successor owners of both [properties] in perpetuity." Although Elusive now contends "there was no assignment or assumption of contractual or other rights between Elusive and Altmann, or between Afurong and Canterman," this argument is not accompanied by any citations to the record or supported by legal authority. We conclude that

13

Canterman has established that he and Elusive are bound by the Agreement. Canterman may therefore recover attorney fees as the prevailing party on a "legal action or proceeding arising out of or relating to th[e] Agreement," as set forth in the attorney fees clause.

Elusive's reliance on *Blickman* and *Sessions* is misplaced. Both cases involved attempts by a nonsignatory to recover attorney fees as a third party beneficiary to the contract. In both instances, the court found that the contract at issue did not reflect an intent to benefit the purported third party beneficiary. (See *Blickman, supra,* 162 Cal.App.4th at p. 896; *Sessions, supra,* 84 Cal.App.4th at p. 680.) Here, Canterman contends that he is entitled to attorney fees (as Elusive would have been had it prevailed) as the successor-in-interest to the Agreement. Moreover, the Agreement expressly stated it was "binding on both parties hereto and for their respective benefit and shall also be binding on the heirs, executors, administrators, representatives, attorneys, counsel, successors, and the assigns of either respective party hereto."

We therefore conclude that Canterman established a right to attorney fees under the Agreement as the prevailing party. The trial court erred in denying his motion for attorney fees. We remand the matter so that the trial court may determine the reasonableness of the fees Canterman seeks.

## DISPOSITION

The order denying Canterman's motion for attorney fees is reversed and the matter is remanded for further proceedings. Canterman is entitled to his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, ACTING P.J.


We concur:


MORI, J.                                              ZUKIN, J.


14