[No. B144476. Second Dist., Div. Three. Feb. 28, 2002.]

CALIFORNIA WHOLESALE MATERIAL SUPPLY, INC., Plaintiff and Respondent, v.
NORM WILSON & SONS, INC., Defendant and Appellant.

600

COUNSEL

Gallagher & Moore and Shannon Gallagher for Defendant and Appellant.

Karpeles & Associates, Eli J. Karpeles and Randall S. Guritzky for Plaintiff and Respondent.

OPINION

**KLEIN, P. J.**—Defendant and appellant Norm Wilson & Sons, Inc. (Wilson) appeals an order denying its motion for attorney fees following a court

trial wherein it successfully defended an action brought by plaintiff and respondent California Wholesale Material Supply, Inc., doing business as CalPly (CalPly) for collection of accounts receivable. Wilson also appeals an order granting a motion by CalPly to tax attorney fees as an item of costs.

After the judgment for Wilson was entered, the essential issue remaining is whether the subject action by CalPly arose out of a contract containing an attorney fee clause, namely, the subcontract between Wilson and Johnwall Interiors, Inc. (Johnwall), so as to entitle Wilson, as the prevailing party, to attorney fees.

Pursuant to a security agreement, Johnwall had granted a security interest in the Wilson/Johnwall subcontract and in its accounts receivable to a creditor, CalPly. Following Johnwall's default, CalPly, as a secured party and Johnwall's assignee, sued Wilson to collect the money Johnwall had earned under the subcontract. Consequently, CalPly's collection action against Wilson arose out of the subcontract. Wilson defeated CalPly's claim, entitling Wilson to recover its attorney fees as the prevailing party pursuant to the fee provision in the subcontract.

The matter is reversed and remanded for a determination of the amount of attorney fees to be awarded to Wilson.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

On November 28, 1989, Johnwall, a drywall subcontractor, borrowed $150,000 from Home Bank (the Bank). As security for the notes, Johnwall granted a security interest to the Bank in all property set forth in the security agreement, including Johnwall's accounts receivable. That same day, Johnwall executed a UCC financing statement in favor of the Bank.[1] Said financing statement was filed with the California Secretary of State on December 4, 1989.

Johnwall also was indebted to its supplier, CalPly, for various materials, including drywall products. To secure the obligation, Johnwall executed another financing statement in favor of CalPly. This financing statement similarly granted CalPly a security interest in Johnwall's contract rights and

---

[1]Under the general rule, filing a financing statement is necessary for perfection of security interests. (Cal. U. Com. Code, § 9310, subd. (a); see Assem. Com. com., 23C West's Ann. Cal. U. Com. Code (2002 supp.) foll. § 9310, p. 251.)

accounts receivable, even though Johnwall's same accounts receivable already were pledged to the Bank. CalPly's financing statement likewise was filed with the Secretary of State on July 7, 1993.

Wilson is a general contractor. Wilson entered into subcontracts with Johnwall for drywall work. Wilson became indebted to Johnwall on those jobs. Thus, Johnwall's accounts receivable included the money it was owed by Wilson. Wilson owed Johnwall $42,970.

After Johnwall defaulted on its obligation to CalPly, CalPly sought to have Wilson pay directly to it the money Wilson owed to Johnwall. Wilson responded that CalPly's demand letter was insufficient to constitute proper notice under the Commercial Code, and that it also appeared the Bank had a senior position.

On September 15, 1994, the Bank assigned its interest in Johnwall's promissory note, security agreement and financing statement to Construction Financial, LLC. Construction Financial notified Wilson it was the Bank's assignee and requested payment of the money Wilson owed to Johnwall. As of November 10, 1994, Johnwall owed Construction Financial approximately $122,000 as the remaining balance on a July 26, 1993 promissory note. On that day, Wilson paid $42,970 to Construction Financial as the holder of the July 26, 1993 promissory note and a prior perfected security interest in Johnwall's accounts receivable.

### 2. *Proceedings.*

CalPly filed this collection action against various defendants, including Wilson. CalPly alleged it was a secured party and the assignee of Johnwall's accounts receivable pursuant to its security agreement with Johnwall, but that Wilson wrongfully paid the money it owed Johnwall under the subcontract to Construction Financial rather than to CalPly. CalPly alleged a cause of action against Wilson for damages for breach of California Uniform Commercial Code (UCC) former section 9502, which set forth the collection rights of a secured party.[2]

A court trial was held over five days between September 18, 1998, and March 5, 1999. The parties stipulated to certain facts, including: any contracts entered into by Wilson were entered into with Johnwall; any amounts

---

[2]California UCC former section 9502 was repealed by Statutes 1999, chapter 991, section 34, operative July 1, 2001. The former statute provided in relevant part: "When so agreed and in any event on default the secured party is entitled to notify an account debtor or the obligor on an instrument to make payment to him or her whether or not the assignor was theretofore making collections on the collateral, and also to take control of any proceeds to which he or she is entitled under Section 9306." (Stats. 1998, ch. 932, § 26, Cal. UCC former § 9502,

owed by Wilson were owed to Johnwall; and on November 10, 1994, Wilson paid $42,970.12 to Construction Financial as the holder of a July 26, 1993 promissory note and prior perfected security interest in the accounts receivable of Johnwall.

On March 17, 2000, judgment was entered in favor of Wilson, because it had properly paid the full amount it owed Johnwall on the subcontract to Construction Financial.

On April 3, 2000, Wilson filed a motion to recover the attorney fees it had incurred in defending the action. The attorney fee motion was based on Code of Civil Procedure section 1021 et seq., and was made on the grounds that Wilson was the prevailing party in the collection action and therefore entitled to an award of attorney fees pursuant to the Wilson/Johnwall subcontract.[3] In the motion, Wilson argued CalPly was also the assignee of Johnwall's accounts receivable, and as the assignee, CalPly stood in Johnwall's shoes relative to its claim for money due from Wilson, and therefore CalPly was subject to an award of attorney fees as the losing party in the litigation pursuant to the underlying subcontract between Wilson and Johnwall. Wilson filed a memorandum of costs, seeking $45,424, including $44,999 in attorney fees.

CalPly opposed the attorney fees motion and filed a motion to strike or tax the item of attorney fees from the memorandum of costs. CalPly took the position no attorney fees were due because: its sole cause of action against Wilson was for damages for wrongful payment of moneys in violation of CalPly's priority security interest pursuant to California UCC former section 9502; there was no contract between CalPly and Wilson; the subcontract upon which Wilson based its attorney fee request was not introduced or admitted into evidence at trial; and CalPly's action against Wilson was not an action on the Wilson/Johnwall subcontract.

The matter came on for hearing on May 3 and June 21, 2000. The trial court denied Wilson's motion for attorney fees, but awarded it costs of

---

subd. (1); see now Cal. UCC, § 9607.) For purposes of clarity and consistency, we refer to the former statute throughout.

[3]The form subcontract between Wilson and Johnwall contained the following attorney fees clause: "If either party becomes involved in . . . *litigation arising out of this Contract or the performance of it*, the court . . . in such . . . litigation, or in a separate suit, may award reasonable costs and expenses of . . . litigation, including . . . attorney's fees, to the party justly entitled to them. The parties agree that the party who recovers arbitration or litigation expenses shall recover the full amount of all such expenses and fees incurred in good faith." (Italics added.)

A copy of the subcontract was appended as an exhibit to counsel's declaration in support of the motion for attorney fees; the subcontract was not introduced or admitted into evidence at trial.

$435.30. In ruling on the matter, the trial court observed: "[T]his case was tried on a single theory, it wasn't a contract theory. [¶] . . . Because if there was a contract claim as well as the UCC-1 claim based on [section] 9502 of the UCC, it was not tried on that theory."

The trial court further found the subject action did not arise out of the contract between Wilson and Johnwall. Rather, the litigation arose out of the security agreement between CalPly and Johnwall. In rejecting Wilson's argument, the trial court observed, "It seems to me, sir, you're boot strapping a third-party contract and trying to make that the basis of your claim for attorney's fees."

Wilson filed a timely notice of appeal from the orders.[4]

## CONTENTIONS

Wilson contends: pursuant to the security agreement, CalPly was the assignee of Johnwall's rights under a contract that included an attorney fee provision; CalPly would have been entitled to recover attorney fees against Wilson had it prevailed; and therefore Wilson is entitled to recover its fees from CalPly. The claim made by CalPly constituted an action on a contract and, even if it did not, the attorney fee provision in the agreement between Johnwall and Wilson is broad enough to encompass noncontract claims as well.

CalPly, in turn, seeks sanctions for what it contends is a frivolous appeal by Wilson.

## DISCUSSION

### 1. *Standard of review.*

■ On appeal, this court reviews a determination of the legal basis for an award of attorney fees de novo as a question of law. (*Sessions Payroll Management, Inc. v. Noble Construction Co.* (2000) 84 Cal.App.4th 671, 677 [101 Cal.Rptr.2d 127].) ■ Attorney fees are not recoverable as costs unless a statute or contract expressly authorizes them. (*Ibid.*)

Here, the issue is whether CalPly's action against Wilson arose out of the Wilson/Johnwall subcontract so as to implicate the attorney fee provision

---

[4]The orders are appealable as orders after final judgment. (Code Civ. Proc., § 904.1, subd. (a)(2).)

therein. ■ California courts "liberally construe 'on a contract' to extend to any action '[a]s long as an action "involves" a contract and one of the parties would be entitled to recover attorney fees under the contract if that party prevails in its lawsuit . . . .' *Milman v. Shukhat*, 22 Cal.App.4th 538, 27 Cal.Rptr.2d 526, 529-30 (1994)." (*In re Baroff* (9th Cir. 1997) 105 F.3d 439, 442-443; accord, *Santisas v. Goodin* (1998) 17 Cal.4th 599, 608 [71 Cal.Rptr.2d 830, 951 P.2d 399].)

> 2. *Overview: Trial court erred in denying Wilson's motion for attorney fees as the prevailing party because CalPly's action against Wilson arose out of the subcontract between Wilson and Johnwall, which subcontract had been assigned to CalPly pursuant to the security agreement.*

The trial court denied Wilson's motion for attorney fees on the ground that CalPly's action against Wilson did not arise out of the subcontract between Wilson and Johnwall. Rather, according to the trial court, the litigation between CalPly and Wilson arose out of the *security agreement* between the CalPly and Johnwall, and the "case was tried on a single theory [under the UCC], it wasn't a contract theory."

■ However, the trial court's ruling overlooked the existence of the underlying Wilson/Johnwall subcontract, which fact was stipulated to at trial, and which subcontract contained the attorney fee provision. As indicated, Johnwall had given CalPly a security interest in the subcontract. Subsequently, there arose competing claims to Johnwall's earnings under the subcontract. In this action by CalPly against Wilson, the parties litigated the issue of which party had the right to payment of the money earned by Johnwall under the Wilson/Johnwall subcontract.

Pursuant to the security agreement between Johnwall and CalPly, CalPly became the *assignee* of Johnwall's rights in the subcontract between Wilson and Johnwall and CalPly thereby stepped into Johnwall's shoes as a matter of law. Thereafter, CalPly, as Johnwall's assignee, but junior to the Bank's position in Johnwall's receivables, filed a meritless collection action against Wilson and lost. CalPly sought in its complaint to enforce its *security interest* in Johnwall's accounts receivable and contract rights pursuant to the UCC, and as pled in the complaint, CalPly was also the "assignee" of Johnwall's accounts receivable and contract rights.

Irrespective of the fact CalPly framed its complaint against Wilson as an action for damages for breach of California UCC former section 9502, which set forth the collection rights of a secured party, the parties necessarily litigated CalPly's claim for money allegedly due Johnwall under the subcontract with Wilson. As the prevailing party in the collection action, Wilson

was entitled by way of a posttrial motion to invoke the attorney fee provision in the subcontract and it is entitled to recover its reasonable attorney fees from CalPly, even though that aspect of the subcontract was not litigated at the time of trial.

3. *For purposes of California UCC former section 9502, no distinction exists between an assignee of a debtor's accounts receivable and the holder of a security interest in a debtor's accounts receivable.*

■ Clearly, attorney fees would be available to the prevailing party in a straightforward action arising out of the subcontract between Wilson and Johnwall. As indicated, the subcontract contains the following attorney fees clause: "If either party becomes involved in . . . litigation arising out of this Contract or the performance of it, the court . . . in such . . . litigation, or in a separate suit, may award reasonable costs and expenses of . . . litigation, including . . . attorney's fees, to the party justly entitled to them."

In order to secure its debt to CalPly, Johnwall gave CalPly a security interest in its contract rights and accounts receivable. The financing statement described the security interest as including "[a]ll accounts receivable, instrument, chattel paper, general intangibles and contract rights, now or hereafter owned or acquired by Debtor . . . ." CalPly thus became the *assignee* of Johnwall's rights under the Wilson/Johnwall subcontract.

Nonetheless, in opposition to Wilson's claim to attorney fees, CalPly attempts to draw a controlling legal distinction between the holder of a security interest and an assignee, and argues the security interest it obtained from Johnwall was *not* an assignment of contractual rights.

*Western Decor & Furnishings Industries, Inc. v. Bank of America* (1979) 91 Cal.App.3d 293 [154 Cal.Rptr. 287], speaks directly to this issue. There, the court rejected the borrower's contention that only an *assignee* of accounts receivable may seek payment from an account debtor, and that the bank had no right to seek payment from the account debtors because the bank merely was a creditor with a security interest in the borrower's accounts receivable and not an assignee. (*Id.* at p. 302.) In arriving at that conclusion, *Western Decor* stated: "This theory that a distinction exists between an assignee of accounts receivable and a holder of a security interest in proceeds in the application of section 9502, subdivision (1), is erroneous. [¶] The purpose of section 9502, subdivision (1) is to provide an *alternative method* for a secured party to foreclose a security interest in accounts receivable. . . . Although the most prevalent kind of financing transaction is a loan secured by an assignment of accounts, *there appears to be no reason to distinguish*

*between a secured party who has a security interest in the accounts receivable and one who has an assignment."* (*Id.* at pp. 302-303, italics added.)

A well-reasoned case from another jurisdiction, *Bank of Waunakee v. Rochester Cheese Sales, Inc.* (7th Cir. 1990) 906 F.2d 1185, is in accord. There, a bank with a security interest in the accounts receivable of Waunakee Kase Haus, Inc. (Kase Haus) brought an action against Rochester Cheese Sales, Inc. (Rochester), an account debtor of Kase Haus, seeking collection of Kase Haus's accounts receivable. (*Id.* at pp. 1186-1188.) The district court granted summary judgment in favor of Rochester, finding that as an account debtor of Kase Haus, Rochester was entitled to set off amounts Kase Haus owed it against the amount it owed Kase Haus pursuant to section 409.318(1)(b) of the Wisconsin UCC. (906 F.2d at p. 1188.)[5]

On appeal, the bank contended Wisconsin UCC section 409.318 was inapplicable because the bank's security interest in Kase Haus's accounts receivable was not an assignment of those accounts as collateral. (*Bank of Waunakee v. Rochester Cheese Sales, Inc., supra*, 906 F.2d at p. 1189.) The Seventh Circuit Court of Appeals rejected the bank's contention and affirmed, stating: "For purposes of section 409.318 and the equivalent statute in other states, *the courts and the UCC have made no distinction between a party with a security interest in a debtor's accounts receivable and a party who is an assignee of a debtor's accounts receivable."* (*Id.* at p. 1190, italics added.)

The analyses of *Western Decor* and *Bank of Waunakee* are applicable to our fact situation. The facts herein clearly establish that CalPly sued Wilson to collect on the subcontract after having obtained a security interest/ assignment from Johnwall. The mere fact that the trial court found the case was tried on "one theory" does not preclude Wilson from collecting its attorney fees, provided it has a legitimate theory to do so. Guided by *Western Decor* and *Bank of Waunakee*, we find no inconsistency between Wilson's defeating a suit brought by CalPly as Johnwall's assignee, and Wilson's entitlement to attorney fees pursuant to the fee provision in the Wilson/Johnwall subcontract.

---

[5]Wisconsin UCC section 409.318(1) provided: "(1) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in s. 409.206 the rights of an assignee are subject to: [¶] (a) All the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and [¶] (b) Any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment." (*Bank of Waunakee v. Rochester Cheese Sales, Inc., supra*, 906 F.2d at pp. 1188-1189.)

The California counterpart is found at California UCC section 9404. (Stats. 2000, ch. 1003, § 23, operative July 1, 2001, derived from Cal. UCC former § 9-318, subd. (1); see 23C West's Ann. Cal. U. Com. Code, *supra*, UCC com. foll. § 9404, p. 390.)

Here, CalPly's action to recover the sum allegedly due under the subcontract terminated with a judgment in favor of Wilson; Wilson was the party prevailing on the subcontract as a matter of law in that it obtained " 'a simple, unqualified win' " by defeating the sole contractual claim alleged against it (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 877 [39 Cal.Rptr.2d 824, 891 P.2d 804]); and Wilson is entitled to recover reasonable attorney fees from CalPly pursuant to the attorney fee provision in the subcontract.

### 4. *CalPly is liable for attorney fees pursuant to the subcontract even though it was not a signatory thereto.*

 For purposes of Wilson's entitlement to attorney fees, it is immaterial that CalPly was not a signatory to the Wilson/Johnwall subcontract.

Given the purpose of establishing mutuality of remedy, and to prevent one-sided attorney fee provisions, *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124 [158 Cal.Rptr. 1, 599 P.2d 83] interpreted Civil Code section 1717 to "provide a reciprocal remedy for a nonsignatory defendant, sued on a contract as if he were a party to it, when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant." (25 Cal.3d at p. 128.)

Unlike the fact situation in *Reynolds Metals*, here the plaintiff, CalPly, is the nonsignatory party and the defendant, Wilson, signed the subcontract. However, "the rationale of *Reynolds Metals* 'has also been applied . . . in actions by a nonsignatory plaintiff seeking to enforce a contract against a signatory defendant.' [Citation.] 'Where a nonsignatory plaintiff sues a signatory defendant in an action on a contract and the signatory defendant prevails, the signatory defendant is entitled to attorney fees only if the nonsignatory plaintiff would have been entitled to its fees if the plaintiff had prevailed.' [Citation.]" (*Sessions Payroll Management, Inc. v. Noble Construction Co., supra*, 84 Cal.App.4th at p. 679.)

 Had CalPly prevailed on its cause of action as the assignee of Johnwall's rights under the Wilson/Johnwall subcontract, Wilson would have been liable to CalPly for attorney fees pursuant to the subcontract.[6] Consequently, because Wilson would have been liable for attorney fees pursuant to the attorney fee provision had CalPly prevailed, Wilson is entitled to recover attorney fees pursuant to the subcontract now that it has prevailed. (*Reynolds Metals Co. v. Alperson, supra*, 25 Cal.3d at pp. 128-129; *Sessions Payroll Management, Inc. v. Noble Construction Co., supra*, 84 Cal.App.4th at p. 679.)

[6]CalPly's complaint against Wilson included a prayer for attorney fees.

*5. No merit to CalPly's contention that as the mere holder of a security interest, it cannot be held liable for attorney fees pursuant to the fee provision in the subcontract.*

CalPly contends that as the mere holder of a security interest in Johnwall's accounts receivable, it cannot be held liable for attorney fees pursuant to the fee provision in the Wilson/Johnwall subcontract. However, CalPly's reliance on California UCC former section 9317 is misplaced. That statute provided: "The mere existence of a security interest or authority given to the debtor to dispose of or use collateral *does not impose contract or tort liability upon the secured party* for the *debtor's* acts or omissions." (Cal. UCC, former § 9317, italics added; see now Cal. UCC, § 9402, operative July 1, 2001.)

Here, contractual liability is *not* being imposed upon the secured party, CalPly, for the acts or omissions of the *debtor*, i.e., Johnwall. Rather, CalPly is liable for attorney fees for its *own conduct* in bringing a meritless action against Wilson to collect the sum allegedly due under the subcontract.

What CalPly fails to recognize is that it was CalPly which instituted this action against Wilson to recover the proceeds allegedly due under the subcontract on the theory that Wilson had breached its obligation under California UCC former section 9502 by paying Construction Financial, the Bank's assignee, instead of CalPly. Wilson defeated CalPly's claim and therefore is entitled to its attorney fees. In sum, CalPly's status as the holder of a security interest does not immunize it from liability for Wilson's reasonable attorney fees pursuant to the fee provision in the subcontract.[7]

*6. In denying Wilson's motion for attorney fees, the trial court exclusively focused on the security agreement between CalPly and Johnwall and overlooked the relationship between the security agreement and the underlying subcontract.*

We have only a limited record before us. Because the appeal is from posttrial orders on attorney fees and costs, the parties did not furnish this court with a reporter's transcript of the trial. However, the record reflects the trial court's rationale in denying Wilson's posttrial motion for attorney fees was that the case had been tried on a single theory, namely, CalPly's cause of action for violation of California UCC former section 9502, and not a contract theory.

---

[7] If our interpretation is not what the Legislature intended, the statutory scheme could use clarification. (See *International Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc.* (1999) 69 Cal.App.4th 287, 304, fn. 6 [81 Cal.Rptr.2d 456], and cases cited therein.)

Although CalPly's complaint was predicated on a violation of the UCC, the stipulation of facts which was presented to the trial court at the time of trial indicated Wilson had entered into a subcontract with Johnwall, and Johnwall's earnings under the subcontract were the basis of CalPly's collection action against Wilson. Wilson's payment of moneys it owed Johnwall to Construction Financial, pursuant to the Bank's senior security interest, enabled Wilson to prevail at trial.

As the trial unfolded, it would have been helpful to the trial court's full appreciation of the fact that CalPly was suing as the assignee of Johnwall's rights under the subcontract if the parties had placed in evidence the subcontract, with its attorney fee clause, and cited *Western Decor*. The trial court thereby would have been advised of the relationship between the underlying subcontract and the assignment of the subcontract to CalPly, a secured party which was suing Wilson to collect on the subcontract. Had that nexus been clarified for the trial court, the trial court could have recognized the application of the principle that there is no reason to distinguish between a secured party who has a security interest in a debtor's accounts receivable and one who has an assignment. (*Western Decor & Furnishings Industries, Inc. v. Bank of America, supra*, 91 Cal.App.3d at pp. 302-303.)

Because there was no full exposition at trial of the relationship between the security interest and the underlying subcontract, the trial court was not fully advised in the premises until the posttrial motion by Wilson for attorney fees, wherein Wilson proffered the subcontract for the first time. The trial court apparently felt constrained by the parties' theory at trial, dismissed the subcontract as an unrelated "third-party contract," and denied Wilson's motion for attorney fees on the ground the case had been tried on a single theory, pursuant to the UCC, and not a contract theory.

In any event, the case was tried as it was pled. Nonetheless, regardless of CalPly's theory at trial, Wilson is entitled to recover its reasonable attorney fees, by way of a posttrial motion, because the action arose out of the subcontract, Wilson was the prevailing party at trial and the subcontract authorizes an award of attorney fees to the prevailing party.

7. *No merit to CalPly's contention the appeal is frivolous.*

Apparently subscribing to the notion that the best defense is a good offense, in addition to urging us to uphold the trial court's decision, CalPly requests that Wilson be sanctioned in the amount of $7,980 in attorney fees for prosecuting a frivolous appeal. Our reversal of the trial court's ruling establishes that Wilson's appeal is meritorious and obviates any need to discuss the issue of sanctions.

## DISPOSITION

The order denying Wilson's motion for attorney fees is reversed. The order on the motion to strike or tax costs is reversed insofar as it struck the item of attorney fees from the memorandum of costs, and is otherwise affirmed. The matter is remanded for a determination of the amount of attorney fees to which Wilson is entitled as the prevailing party in this action. CalPly's request for sanctions on appeal is denied. Wilson shall recover its costs on appeal.

Croskey, J., and Aldrich, J., concurred.

A petition for a rehearing was denied March 27, 2002.