[No. D059971. Fourth Dist., Div. One. Mar. 8, 2013.]

TOMATOES EXTRAORDINAIRE, INC., Plaintiff and Respondent, v. WILLIAM J. BERKLEY, Defendant and Appellant.

COUNSEL

Casey Gerry Schenk Francavilla Blatt & Penfield and T. Michael Reed for Defendant and Appellant.

Paul Marion Grinvalsky for Plaintiff and Respondent.

OPINION

HALLER, J.—Tomatoes Extraordinaire, Inc., doing business as Specialty Produce (Specialty), sued Wellington, Inc., doing business as Jack's La Jolla (Jack's), and its controlling officer, William J. Berkley, for failure to pay outstanding invoices for produce supplied by Specialty to Jack's. After a court trial, Berkley was found personally liable for Specialty's damages. This personal liability was based on the Perishable Agricultural Commodities Act, 1930 (PACA; 7 U.S.C. § 499a et seq.), which regulates qualifying transactions in the produce industry.

On appeal, Berkley raises an issue of statutory interpretation, arguing that Specialty did not establish that Jack's was a produce "dealer" within the meaning of PACA to support the imposition of personal liability permitted under PACA. We agree, and reverse the judgment.

## BACKGROUND

Specialty, a produce seller, incurred damages when Jack's failed to pay for produce it received from Specialty, and then went out of business.[1] Specialty filed an action against Jack's, as well as against Berkley in his individual capacity, to recover the monies owed for the produce. Specialty alleged that Berkley was personally liable for Jack's debts under two theories: (1) Berkley had provided a personal guarantee to Specialty and (2) Jack's was a dealer within the meaning of PACA and hence the PACA provisions (which allow imposition of personal liability on corporate officers who were controlling the operations of the produce buyer) applied to Berkley.

Specialty obtained a default judgment against Jack's. As to Berkley's individual liability, the trial court rejected Specialty's personal guarantee claim, but ruled in its favor on the PACA claim. Based on the ruling under PACA, Specialty obtained a $44,624.91 judgment against Berkley in his personal capacity for Jack's debts.

---

[1] Because we resolve this appeal based on a narrow issue of statutory interpretation, we need not delineate the facts underlying Jack's failure to pay Specialty.

PACA's provisions apply to produce buyers who qualify as statutorily defined "dealers." The dispute on appeal concerns the statutory definition of the term "dealer." Berkley argues that based on the plain language of the PACA statute (and accompanying regulations), there are two requirements for a produce buyer to qualify as a dealer: (1) a threshold requirement, showing that the produce buyer purchased produce in "wholesale or jobbing quantities" (meaning at least one ton of produce in any day), and (2) a supplementary requirement applied to retailers, showing that the produce buyer purchased more than $230,000 worth of produce in any calendar year. Specialty, on the other hand, argues that under a proper interpretation of the PACA statute and relevant regulations, a produce retailer qualifies as a PACA dealer if it meets the $230,000 requirement, and that the one-ton requirement is inapplicable to retailers.

At trial, Specialty was represented by counsel and Berkley represented himself. Specialty presented evidence relating to the $230,000 requirement, and the court found this requirement had been met. Specialty did not present evidence concerning the one-ton requirement, and neither party raised it as an issue. After the trial court entered the judgment in Specialty's favor, Berkley filed motions to vacate and enter a new judgment or for a new trial. Berkley (now represented by counsel) argued the judgment was legally erroneous because Specialty had not established the one-ton requirement.[2] The trial court rejected Berkley's claim concerning the one-ton requirement and denied the motions.

On appeal, Berkley reiterates his assertion that the trial court's application of PACA in this case was erroneous because Specialty did not establish that Jack's met the one-ton requirement. As alternative arguments, he asserts (1) there was insufficient evidence to support the court's finding that Jack's met the $230,000 requirement and (2) the amount of damages was erroneously calculated because the court failed to remove items in Specialty's bills to Jack's that were not perishable commodities under PACA.

As we shall explain, we conclude that Berkley's interpretation of the PACA statute is correct, i.e., a retailer must meet *both* the one-ton and $230,000 requirements to qualify as a PACA dealer. Because Specialty has not cited to anything in the record establishing that Jack's satisfied the one-ton requirement, the trial court erred in applying PACA to impose personal liability on Berkley and the judgment must be reversed. Given our holding, we need not address Berkley's alternative arguments challenging the judgment.

---

[2] Berkley filed the motions to vacate or for new trial in propria persona, but during the hearing on the motions counsel substituted into the case and presented argument on his behalf.

## DISCUSSION

■ When interpreting a statute, we examine the words of the statute, giving them a plain and commonsense meaning. (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 577 [110 Cal.Rptr.2d 809, 28 P.3d 860].) We construe the language in the context of the overall statutory scheme, with the fundamental goal of effectuating the purpose of the statute. (*Id.* at p. 578; *Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].) When the statutory language is susceptible of more than one reasonable interpreta- tion, we may look to extrinsic aids to assist with ascertaining and effectuating legislative intent. (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [14 Cal.Rptr.3d 857, 92 P.3d 350].)

■ PACA was enacted " 'to promote fair trading practices in the marketing of perishable agricultural commodities, largely fruits and vegetables.' " (*In re Magic Restaurants, Inc.* (3d Cir. 2000) 205 F.3d 108, 110 (*Magic Restaurants*).) The statute is designed to protect suppliers of perishable agricultural products who sell produce to certain statutorily defined buyers. (*Id.* at pp. 110–111.) PACA's protections include provisions that prohibit a variety of unfair trade practices by produce buyers; require produce buyers to hold the produce and the proceeds from the produce in trust for the benefit of the sellers until full payment is made; and allow produce sellers to file court actions seeking to hold a corporation's controlling officers personally liable for the amounts owed for the produce. (*Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.* (3d Cir. 2010) 623 F.3d 163, 167–168; 171–172; *American Banana Co., Inc. v. Republic National Bank of New York* (2d Cir. 2004) 362 F.3d 33, 36–37; *Patterson Frozen Foods, Inc. v. Crown Foods Internat., Inc.* (7th Cir. 2002) 307 F.3d 666, 669.)

Relevant here, PACA applies to produce buyers who meet the statutory definition of a dealer under the act. (See *Magic Restaurants, supra,* 205 F.3d at p. 110.) PACA defines a "dealer" as any person who buys or sells produce "*in wholesale or jobbing quantities,* as defined by the Secretary . . . ." (7 U.S.C. § 499a(b)(6), italics added.)[3] Further, in an exceptions clause to section 499a, the statute excludes retailers from the definition of a PACA dealer "until the invoice cost of his purchases of perishable agricultural commodities in any calendar year are in excess of $230,000." (§ 499a(b)(6)(B).) Section 499a also states that a retailer who is excluded as a PACA dealer under the exceptions clause may elect to secure a PACA license, and during the term of the license the retailer will be considered a dealer. (§ 499a(b)(6).)[4]

---

[3] Subsequent statutory references are to title 7 of the United States Code.

[4] Section 499a(b)(6) states: "(b) Definitions [¶] For purposes of this chapter: [¶] . . . [¶] (6) The term '*dealer*' means any person engaged in the business of buying or selling *in wholesale or jobbing quantities,* as defined by the Secretary, any perishable agricultural commodity in

The Code of Federal Regulations sets forth the definition of the "wholesale or jobbing quantities" standard referenced in section 499a. The applicable regulation defines "wholesale or jobbing quantities" as "aggregate quantities of all types of produce *totaling one ton (2,000 pounds)* or more in weight in any day . . . ." (7 C.F.R. § 46.2(x) (2013), italics added.)[5] Also, the regulations reiterate the section 499a statutory definition of a dealer, stating that a dealer means any person engaged in buying or selling "in wholesale or jobbing quantities," including "[r]etailers, when the invoice cost of all purchases of produce exceeds $230,000 during a calendar year." (Reg. 46.2(m) (2013).)[6]

Specialty argues the one-ton requirement does not apply to retailers, and the only requirement to invoke PACA for retailers is the $230,000 requirement. In support, Specialty contends that regulation 46.2(m) (2013)—the regulation that mirrors the section 499a statutory provision defining dealers— reflects an intent to remove the wholesale or jobbing quantities requirement for retailers. Specialty's interpretation does not comport with the plain language of section 499a, nor with the plain language of regulation 46.2(m) (2013).

interstate or foreign commerce, except that (A) no producer shall be considered as a 'dealer' in respect to sales of any such commodity of his own raising; (B) no person buying any such commodity solely for sale at *retail* shall be considered as a 'dealer' until the invoice cost of his purchases of perishable agricultural commodities *in any calendar year are in excess of $230,000*; and (C) no person buying any commodity other than potatoes for canning and/or processing within the State where grown shall be considered a 'dealer' whether or not the canned or processed product is to be shipped in interstate or foreign commerce, unless such product is frozen or packed in ice, or consists of cherries in brine, within the meaning of paragraph (4) of this section. Any person *not considered as a 'dealer' under clauses (A), (B), and (C) may elect to secure a license* under the provisions of section 499c of this title, and in such case and while the license is in effect such person *shall be considered as a 'dealer'*." (Italics added, boldface omitted.)

[5] Title 7 Code of Federal Regulations part 46.2(x) (2013) states: "*Wholesale or jobbing quantities*, as used in paragraph (6) of the first section of the Act, means aggregate quantities of all types of produce totaling *one ton (2,000 pounds) or more in weight in any day* shipped, received, or contracted to be shipped or received." (Italics added.) Subsequent references to "regulations" are to the parts in title 7 of the Code of Federal Regulations.

[6] Regulation 46.2(m) (2013) states: "*Dealer* means any person engaged in the business of buying or selling *in wholesale or jobbing quantities* in commerce and includes: [¶] (1) Jobbers, distributors and other wholesalers; [¶] (2) *Retailers, when the invoice cost of all purchases of produce exceeds $230,000 during a calendar year. In computing dollar volume, all purchases of fresh and frozen fruits and vegetables are to be counted, without regard to quantity involved in a transaction* or whether the transaction was intrastate, interstate or foreign commerce; [¶] (3) Growers who market produce grown by others. [¶] (4) The term 'dealer' does not include persons buying produce, other than potatoes, for canning and/or processing within the State where grown, whether or not the canned or processed product is to be shipped in interstate or foreign commerce, unless such product is frozen, or packed in ice, or consists of cherries in brine." (Some italics added.)

■ The language of section 499a (and accompanying reg. 46.2(x) (2013)) is straightforward: a PACA dealer is a person who buys or sells produce in wholesale or jobbing quantities, which means at least one ton in any day; except if the person is a retailer the PACA rules do not apply until the retailer's annual produce invoices reach more than $230,000 or the retailer elects to secure a PACA license. That is, the retailer provision in section 499a excludes retailers who would otherwise qualify as dealers based on the one-ton requirement, if their annual produce purchases are $230,000 or below. Or—stated differently—the retailer provision imposes a requirement that supplements the one-ton requirement by mandating that retailers have more than $230,000 in annual produce purchases to qualify them as dealers. There is nothing in section 499a's retailer provision that suggests it is a stand-alone alternative standard for retailers that replaces the threshold one-ton requirement that would otherwise define a dealer.

Contrary to Specialty's contention, regulation 46.2(m) (2013) does not support a different interpretation of the statute. Regulation 46.2(m) (2013) states in relevant part:

"Dealer means any person engaged in the business of buying or selling *in wholesale or jobbing quantities* in commerce and includes:

"(1) Jobbers, distributors and other wholesalers;

"(2) Retailers, when the invoice cost of all purchases of produce exceeds $230,000 during a calendar year. *In computing dollar volume*, all purchases of fresh and frozen fruits and vegetables are to be counted, *without regard to quantity involved in a transaction* or whether the transaction was intrastate, interstate or foreign commerce . . . ." (Italics added & omitted; see fn. 6, *ante*.)

■ Specialty interprets the regulation to mean the "wholesale or jobbing quantities" language only applies to jobbers and wholesalers, and interprets the "without regard to quantity" language for retailers as meaning the wholesale or jobbing quantities requirement is inapplicable to retailers. This interpretation is not supported by the plain language of the regulation. First, the regulation sets forth the wholesale or jobbing quantities requirement in the introductory sentence defining a dealer, and then delineates the various produce buyers who can be dealers, including jobbers, distributors, other wholesalers, and retailers. The regulation does *not* apply the wholesale or jobbing quantities requirement *solely* to jobbers and wholesalers; rather, it includes retailers as among the subsets of persons (along with jobbers, distributors, and other wholesalers) who can be dealers as defined in the introductory sentence.

Second, the "without regard to quantity" language in the retailer subdivision addresses how to calculate the dollar volume for retailers, and says nothing about removing the threshold wholesale or jobbing quantities (one-ton) requirement. We deduce that the language stating that dollar volume should be computed for all purchases without regard to the quantity of produce in any particular transaction was designed to prevent parties from factoring the threshold one-ton requirement into the monetary calculation; i.e., the retailer is not required to have more than $230,000 worth of *one-ton* transactions, but rather all transactions should be monetarily counted regardless of their quantity.

Our interpretation of PACA's definition of a dealer is consistent with the history of the statute and case authority referencing the statute. As originally enacted, PACA defined a dealer as follows: "The term 'dealer' means any person engaged in the business of buying or selling *in carloads* any perishable agricultural commodity in interstate or foreign commerce, except that . . . (B) no person buying any such commodity solely for sale *at retail* shall be considered as a 'dealer' in respect of any such commodity in any calendar year until his purchases of such commodity *in carloads in such year are in excess of twenty*. . . . As used in this paragraph, the term *'in carloads' includes corresponding wholesale or jobbing quantities* as defined for any such commodity by the Secretary . . . ." (PACA, Pub.L. No. 71-325 (June 10, 1930) 46 Stats. 531, italics added; see *Consolidated Citrus Co. v. Goldstein* (E.D.Pa. 1963) 214 F.Supp. 823, 825, fn. 3.)

Thus, at PACA's inception, an entity buying produce was not a dealer unless it purchased in carloads (defined as including wholesale or jobbing quantities), and if the entity was a retailer, 20 annual carloads were required. In 1962, the statute's definition of a dealer was amended by changing the reference to "carloads" in the introductory sentence to "wholesale or jobbing quantities." (Historical and Statutory Notes, 7 U.S.C.A. (2009) foll. § 499a, p. 158.) Further, the statute's retailer provision was amended by replacing the requirement of 20 carloads with a requirement based on the monetary amount of annual purchases. (*Ibid.*)[7]

The manner in which Congress amended the statute reflects an intent to define a dealer based on the quantity of produce (i.e., carloads, changed to wholesale or jobbing quantities, defined by the secretary to mean one ton in any day), and then to augment or supplement that requirement for retailers (i.e., 20 annual carloads, changed to $230,000 annual invoice amount). In short, from its enactment and in subsequent amendments, the statute has

---

[7] At the time of the 1962 amendment, the monetary amount was $90,000, and the amount was increased through subsequent amendments; i.e., $100,000 in 1969; $200,000 in 1978; $230,000 in 1981. (Historical and Statutory Notes, 7 U.S.C.A., *supra*, foll. § 499a, p. 158.)

consistently imposed both a base requirement and an augmented or supplementary requirement on retailers, and the only aspect that has changed is the manner of defining those two requirements. Specialty has not provided any authority suggesting that Congress intended that retailers were not governed by the threshold quantitative requirement, but instead solely governed by the $230,000 monetary requirement specified for retailers.

Indeed, a variety of courts have consistently assumed that both the one-ton and the $230,000 requirements must be met to qualify a retailer as a PACA dealer. (See, e.g., *Magic Restaurants, supra*, 205 F.3d at p. 117 ["a restaurant . . . which purchases produce in wholesale or jobbing quantities (and in excess of $230,000 per year), is a [PACA] 'dealer' . . ."]; *In re Old Fashioned Enterprises, Inc.* (8th Cir. 2001) 236 F.3d 422, 425 [". . . PACA defines a dealer as 'any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce,' provided that purchases exceed $230,000 a year. . . . The Secretary defined the term 'wholesale or jobbing quantities' to mean 'aggregate quantities of all types of produce totaling one ton . . . .' " (citation omitted)]; *Bandwagon Brokerage, Inc. v. Mafolie Foods Co., Inc.* (D.V.I. 2001) 168 F.Supp.2d 506, 510 (*Bandwagon*) ["For a retailer to be considered a dealer, its purchases must exceed $230,000 in any calendar year *and* it must buy in wholesale or jobbing quantities." (italics added)]; *In re Reservoir Dogs, Inc.* (N.D.Ill. 2000) 253 B.R. 422, 424 ["from its inception to the present, PACA has defined 'dealer' as including a buyer of perishable agricultural products in quantities above a defined threshold, but has provided an exception for buyers who purchase 'solely for sale at retail' unless these purchases were at a level substantially higher than the ordinarily applicable purchase threshold"].)

In *Bandwagon*, the district court directly addressed the issue of whether the $230,000 retailer requirement was a stand-alone PACA coverage standard that dispensed with the one-ton requirement, and concluded it was not. In *Bandwagon*, there was no evidence that the buyer bought produce in wholesale or jobbing quantities, and accordingly the court found the buyer was not a dealer under PACA. (*Bandwagon, supra*, 168 F.Supp.2d at pp. 509–510.) *Bandwagon* rejected the produce seller's argument that the buyer was a PACA dealer because it had secured a PACA license and therefore satisfied the alternative means of meeting the augmented retailer requirement. (168 F.Supp.2d at pp. 509–510.) *Bandwagon* reasoned: "Looking at the 'wholesale or jobbing quantities' clause, the 'exceptions' clause and the 'license' clause of section 499a(b)(6) reveals that the *'wholesale and jobbing quantities' requirement is a separate condition necessary to bring a transaction under PACA.* For example, the USDA's definition of a dealer as a 'person engaged in buying or selling *in wholesale or jobbing quantities'* includes retailers with invoice costs of all purchases in a calendar year over

$230,000. *See* 7 C.F.R. § 46.2(m)(2) (emphasis added). *For a retailer to be considered a dealer, its purchases must exceed $230,000 in any calendar year and it must buy in wholesale or jobbing quantities.* Nowhere does exception (B) [(the retailer provision)] negate the 'wholesale or jobbing quantities' requirement. Thus, exception 499a(b)(6)(B) merely excludes a person who buys in wholesale or jobbing lots and whose invoice costs during any calendar year *do not* exceed $230,000. Likewise the 'license' clause neither negates nor modifies the 'wholesale or jobbing quantities' clause. It only refers to those entities who meet the statutory exception—in this instance, a retailer with invoice costs below $230,000. [The produce buyer's] license does not bring it under the trust provision of PACA without proof that it bought in quantities of perishable agricultural commodities totaling one ton (2,000 pounds) per transaction." (*Bandwagon, supra,* 168 F.Supp.2d at p. 510, some italics added.)

We agree with the district court's reasoning and reach the same conclusion. The plain language of the statute and accompanying regulations indicates that a retailer qualifies as a PACA dealer only if it meets both the one-ton requirement *and* the $230,000 (or license) requirement. If Congress meant to dispense with the threshold one-ton requirement for retailers, then it is for Congress to amend the language of the statute in this fashion. Absent such legislative action, the plain language controls.

Specialty has not shown there was evidence establishing that Jack's met the one-ton requirement. In a passing argument in its appellate briefing, Specialty argues the one-ton requirement was satisfied in this case because, under regulation 46.2(x) (2013), the one-ton "in any day" requirement is broadly defined to include produce that is "shipped, received, or contracted to be shipped or received" and "Jack's contracted with Specialty for ongoing deliveries." It appears that Specialty is asserting that the one-ton calculation can be based on multiple invoices for different days; i.e., the "in any day" calculation can include produce actually shipped or received on a particular day, as well as produce contracted for on that same day but shipped or received on a different day. We need not evaluate the proper methodology for calculating the one-ton requirement because Specialty has not cited to evidence establishing the requirement was met even under its proposed calculation method.

The trial court erred in finding that Jack's was a dealer under PACA, and the personal liability judgment against Berkley based on PACA must be reversed.

## DISPOSITION

The judgment is reversed. Respondent to pay appellant's costs on appeal.

Huffman, Acting P. J., and Nares, J., concurred.