Filed 3/20/15  Tomatoes Extraordinaire v. Berkley CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TOMATOES EXTRAORDINAIRE, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> WILLIAM BERKLEY, <br><br> Defendant and Respondent. | D065768 <br><br><br> (Super. Ct. No. 37-2010-00085115-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy

B. Taylor, Judge.  Affirmed.

Paul Marion Grinvalsky for Plaintiff and Appellant.

Casey Gerry Schenk Francavilla Blatt & Penfield and Jeremy Robinson for

Defendant and Respondent.

Tomatoes Extraordinaire, Inc., doing business as Specialty Produce (Specialty)

obtained a judgment against William Berkley.  After this court reversed the judgment on

appeal, the trial court entered judgment in Berkley's favor and ordered Specialty to pay

attorney fees incurred by Berkley. Specialty argues Berkley was not entitled to an award of contractual attorney fees. We reject this contention and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The underlying litigation in this case was addressed in a prior appeal to this court. (*Tomatoes Extraordinaire, Inc. v. Berkley* (2013) 214 Cal.App.4th 317 (*Tomatoes I*).)[1] Specialty, a produce seller, supplied produce to a restaurant, Jack's La Jolla (Jack's). Jack's failed to pay for the produce and then went out of business. Specialty filed an action against Jack's, as well as Jack's controlling officer Berkley, to recover the monies owed for the produce. Specialty alleged that Berkley was personally liable for Jack's debts under two theories: (1) Berkley had provided a personal guarantee to Specialty by signing a "Guaranty Agreement," and (2) Jack's was a dealer within the meaning of the Perishable Agricultural Commodities Act, 1930 (PACA; 7 U.S.C. § 499a et seq.) and hence Berkley was subject to the PACA law permitting imposition of personal liability on corporate officers. (*Tomatoes I, supra*, at p. 320.)

In the proceedings before the trial court, Specialty obtained a $44,624.91 judgment against both Jack's and Berkley.[2] Concerning Berkley's personal liability, the trial court rejected Specialty's personal guarantee claim (finding Berkley had not signed or authorized the signing of the Guaranty Agreement), but ruled in Specialty's favor on its PACA personal liability claim. (*Tomatoes I, supra*, 214 Cal.App.4th at pp. 320-321.)

[1] We grant Berkley's unopposed motion requesting that we take judicial notice of the appellate record in *Tomatoes I*.

[2] Jack's did not make an appearance and incurred a default judgment.

2

The trial court's $44,624.91 judgment against Jack's and Berkley included $7,000 for attorney fees incurred by Specialty for the trial-level litigation. The court ordered Jack's and Berkley to pay these fees based on the attorney fees provision in various contractual documents between Specialty and Jack's, including a document entitled "REFERENCES," the Guaranty Agreement, and invoices from Specialty (collectively, the Specialty/Jack's contractual documents).[3]

Berkley represented himself at trial, but after the judgment was entered against him, he retained counsel to assist with a new trial motion and to file an appeal challenging the court's imposition of personal liability on him under PACA. (*Tomatoes I, supra*, 214 Cal.App.4th at p. 321 & fn. 2.) To support his challenge to the judgment, Berkley raised an issue of statutory interpretation, contending that Specialty did not establish that Jack's was a produce dealer within the meaning of PACA, and hence PACA's personal liability principles were inapplicable. His new trial motion was unsuccessful, but he prevailed on appeal to this court based on our interpretation of the

---

[3]    The References document states: "In the event that formal collection efforts are instituted on any invoice arising from this application, the undersigned hereby agree(s) to pay all reasonable collection costs, including but not limited to attorneys' fees and court costs arising from the collection process."
    The invoice states: "If legal action is taken to collect a past due account, buyer agrees to pay all collections costs and/or all reasonable attorney fees."
    The Guaranty Agreement states: "Should collection proceedings be instituted by Specialty Produce, Inc., concerning accounts covered by this GUARANTY AGREEMENT, GUARANTOR (S) hereby agree(s) to be responsible for payment of all reasonable collection costs, attorney fees and court costs incurred in said collection proceedings whether or not litigation is instituted. Further, should any other legal dispute arise among the parties, Specialty Produce, Inc., CLIENT and/or GUARANTOR (S), the prevailing party shall be entitled to attorney fees and costs."

PACA statute. We reversed the judgment, and ordered Specialty to pay Berkley's costs on appeal. (*Tomatoes I*, at pp. 320, 328.)

After reversal of the judgment on appeal, Berkley filed a motion before the trial court for the attorney fees he incurred to reverse the judgment. Berkley noted that he had been ordered to pay contractual attorney fees to Specialty at the trial level when Specialty prevailed, and asserted that he now was entitled to contractual attorney fees because he had succeeded in reversing the judgment in favor of Specialty. Berkley's counsel provided a summation of the fees incurred by Berkley to challenge the PACA personal liability judgment against him. These fees included (1) charges for the unsuccessful new trial motion based on the PACA issue, which counsel stated formed the basis for the appeal and (2) charges for the appeal based on the PACA issue. Because Berkley represented himself at trial, no attorney fees were requested for Berkley's successful litigation of the Guaranty Agreement issue at trial.[4]

The court ruled that Berkley was entitled to contractual attorney fees for the fees he incurred in reversing the judgment, and ordered that Specialty pay $14,725 for Berkley's fees. Even though Berkley's fee request was based on fees incurred for the new

_____

[4] Even though Berkley prevailed on the Guaranty Agreement issue at trial, he was not deemed a prevailing party and was ordered to pay contractual attorney fees because he was held liable for the contractual obligations under PACA. (See *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc*. (2012) 211 Cal.App.4th 230, 239-242.) Once the PACA issue was resolved in his favor on appeal, he was a prevailing party in the litigation and was eligible to request all reasonable fees incurred at the trial and appellate level. (*Douglas, supra*, at p. 250.) However, in the attorney fees motion filed after reversal on appeal, his counsel did not seek fees for the earlier litigation of the Guaranty Agreement issue, apparently because Berkley represented himself at trial and incurred no fees. (See *Trope v. Katz* (1995) 11 Cal.4th 274, 280.)

trial motion and appeal concerning the *PACA* issue, the trial court stated that the fee award was based on the *Guaranty Agreement* issue. The court cited the attorney fees provision in the Guaranty Agreement, and stated Berkley proved he did not sign the Guaranty Agreement and hence he prevailed on this claim.

DISCUSSION

Absent a statute or contractual provision authorizing an award of attorney fees, each party to a lawsuit generally must pay his or her own attorney fees. (*Cargill, Inc. v. Souza* (2011) 201 Cal.App.4th 962, 966 (*Cargill*).) The parties do not dispute that PACA does not contain an attorney fees provision applicable to this case, and that any award of attorney fees in this case requires contractual authorization.

The record shows that there is an attorney fees provision in the Specialty/Jack's contractual documents, and that pursuant to these contractual documents Berkley was ordered to pay attorney fees to Specialty when Specialty prevailed at the trial court level on its PACA personal liability claim against Berkley. Nevertheless, Specialty argues that even though Berkley succeeded on appeal in reversing the personal liability PACA judgment in favor of Specialty, Berkley is not entitled to the fees he incurred to obtain the reversal because he is *not a party* to the Specialty/Jack's contractual documents. Specialty also notes the trial court awarded the attorney fees to Berkley based on the attorney fees provision in the *Guaranty Agreement* and the fact that Berkley prevailed on the personal liability claim derived from this agreement. Specialty asserts this could not provide a proper basis for the fee award because the issue of liability under the Guaranty Agreement was resolved at trial in Berkley's favor and was not at issue on appeal, and

5

further Berkley incurred no fees when litigating this issue because he represented himself at trial. Specialty does not challenge the amount of fees awarded.

As we shall explain, Specialty's allegations against Berkley under PACA law sought to make Berkley *personally liable for Jack's contractual obligations to Specialty* that were set forth in the Jack's/Specialty contractual documents. Thus, even though Jack's (not Berkley) was the signatory in the Jack's/Specialty contractual relationship, Berkley was alleged under PACA to be "standing in the shoes" of Jack's for purposes of the contractual obligations, which included the obligation to pay attorney fees. Accordingly, Berkley, who became the prevailing party on appeal, is entitled to attorney fees as provided for in the Jack's/Specialty contractual documents. The fact that the trial court's written decision narrowly references the Guarantee Agreement and Berkley's success on the guarantee issue, without referencing Berkley's success on the PACA issue on appeal and the contractual documents as a whole, does not defeat Berkley's right to attorney fees as the prevailing party.

Where a contract provides for an award of attorney fees in an action on the contract, the reciprocity provisions of Civil Code section 1717 allow for recovery of fees by whichever party prevails in an action on the contract, regardless of whether the contract specifies that party. (*Cargill, supra*, 201 Cal.App.4th at p. 966.) Absent contractual language indicating otherwise, a contract providing for attorney fees to be awarded to a contracting party does not typically apply to a nonsignatory party. (*Id.* at pp. 966, 968-970.) However, the contractual attorney fees provision may properly apply to a nonsignatory party if the litigation involves circumstances in which "the

6

nonsignatory party 'stands in the shoes of a party to the contract.' " (*Id.* at p. 966; *California Wholesale Material Supply, Inc. v. Norm Wilson & Sons, Inc.* (2002) 96 Cal.App.4th 598, 605-606 (*California Wholesale*).)

For example, when the litigation involves a claim that a nonsignatory party is an assignee or guarantor of the contract containing the attorney fees provision, the contractual attorney fees provision properly extends to the assignee or guarantor who is bound by the terms of the contract. (*California Wholesale, supra*, 96 Cal.App.4th at pp. 605-606, 608; *Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1505-1506.) This principle applies even if the instrument inserting the nonsignatory party into the contractual relationship does *not* contain an attorney fees provision. (*Niederer, supra*, at pp. 1505-1506.) As explained in *Niederer*, "the guaranty and the note [containing the attorney fee provision] 'must be construed to be but one instrument, constituting a single contract, upon which the liability of the guarantor, to the extent of its obligation, [is] commensurate with that of the maker of the note.' " [Citations.] [¶] . . . [¶] While the terms of the guaranty do not specifically provide for payment of attorneys' fees in the event of a suit on the guaranty, the guaranty does, in essence, provide the guarantors will 'perform' the underlying contract or make payment on the note in accordance with its terms in the event of default. Therefore, . . . defendant, as guarantor, agreed to pay attorneys' fees, as provided in the note, if there was a suit against him on the guaranty." (*Ibid.*)

In the litigation underlying *Tomatoes I*, Specialty alleged that Berkley was individually liable for Jack's contractual obligations under PACA personal liability

7

principles. Under the PACA provisions, a corporate officer who controls the assets of a produce buyer holds the assets in trust for the payment of the produce seller, and the failure to pay the seller can result in the imposition of personal liability on the corporate officer. (*Weis-Buy Services, Inc. v. Paglia* (3d Cir. 2005) 411 F.3d 415, 421; *Sunkist Growers, Inc. v. Fisher* (9th Cir. 1997) 104 F.3d 280, 282-283.) In this circumstance, the corporate officer is personally responsible for satisfying the produce buyer's contractual obligations to the produce seller. Thus, if Berkley was held personally liable under PACA, it was because he was obligated to pay the amounts owed by Jack's to Specialty under their contractual agreements. It follows that the attorney fees provision in the Specialty/Jack's contractual documents extended to Berkley as a party "standing in the shoes" of the contracting party for purposes of the contractual obligations.

Consistent with this, at the conclusion of the original trial when Specialty prevailed on its PACA allegation against Berkley, the trial court ordered *Berkley* to pay attorney fees to Specialty based on the attorney fees provision in the Specialty/Jack's contractual documents even though Berkley was a nonsignatory party. On appeal, Berkley succeeded in reversing the PACA liability ruling, and the trial court thereafter ordered *Specialty* to pay contractual attorney fees to Berkley. It is well established that when a signatory party (i.e., Specialty) is entitled to contractual attorney fees when prevailing in an action against a nonsignatory party (i.e., Berkley), the nonsignatory party is likewise entitled to fees in the event the nonsignatory party prevails. (*California Wholesale, supra*, 96 Cal.App.4th at p. 608.) This is the situation here.

8

Contrary to Specialty's assertion, the fact that the PACA personal liability claim alleged against Berkley arose by operation of the PACA law rather than through the express terms of a contract executed by the parties does not alter the applicability of the contractual attorney fees provision to Berkley.[5]  Imposition of PACA personal liability is premised on the assumption that a controlling officer of a qualifying PACA produce buyer is aware that the contractual relationship with a produce seller is governed by the PACA laws.  (See *Golman-Hayden Co., Inc. v. Fresh Source Produce, Inc.* (5th Cir. 2000) 217 F.3d 348, 351.)  In this circumstance, the PACA laws are implicitly incorporated into the contractual agreements and the corporate officer's personal liability under PACA is part of the contractual relationship.  (See *Swenson v. File* (1970) 3 Cal.3d 389, 393 [" ' "laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated" ' "].)  Accordingly, absent some indication that the parties had a contrary intent, the nonsignatory corporate officer being held individually liable is deemed to have agreed to be bound by the attorney fees provision in the contract.  (See, e.g., *E. Armata, Inc. v. Platinum Funding Corp*. (S.D.N.Y. 1995) 887 F.Supp. 590, 594-595 [attorney fees provision in contract between PACA produce buyer and seller applied to nonsignatory

---

5      The Jack's/Specialty contractual documents include references to the PACA statutory trust in favor of the seller, but they do not expressly refer to a controlling officer's personal liability under PACA.

9

party who took over buyer's accounts and who was on constructive notice of its liability under PACA statute].)

Moreover, the record does not reflect that during the underlying trial Specialty's contract claims were segregated from its PACA claims so as to render Berkley's alleged liability under PACA distinct from his alleged liability under the contract. If this had been done, Specialty would *not* have been entitled to an award of contractual attorney fees against Berkley when it prevailed solely on the PACA claim. Because the case was pursued against Blakely in a manner that incorporated the PACA claim into the contract claim, Specialty's attempt to separate the claims for purposes of attorney fees at this juncture is unavailing.

Finally, Berkley's right to attorney fees is not defeated by the fact that the trial court premised its award on the attorney fees provision in the Guaranty Agreement and Berkley's trial-level success on the personal guarantee issue at a time when he was representing himself and incurred no fees. We affirm a judgment if it is legally correct even if for reasons different from the trial court's reasons. (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1268.) Berkley's counsel requested fees based on the PACA issue, and supported his request with a delineation of the hours spent litigating this issue during the new trial motion and appeal. Although the trial court referred to the personal guarantee issue in its written decision, the fees it actually awarded were based on the PACA issue.

We also reject Specialty's assertions that (1) Berkley's request for fees was untimely because he did not seek them when he prevailed at the original trial on the

personal guarantee issue, and (2) the trial court should have denied his fee request on equitable principles. Berkley was not found to be a prevailing party when he prevailed on the personal guarantee issue because he was found liable under PACA, and in any event he did not incur fees on the personal guarantee issue because he represented himself at trial. (See fn. 4, *ante*.) Thus, he had no basis to request fees at the conclusion of the original trial, and there is no untimeliness issue. Further, Specialty has not presented any argument establishing the trial court was required to deny fees on equitable grounds. (See *Nelson v. Kerzner* (E.D.Pa. 1953) 110 F.Supp. 949, 950-951 [PACA produce seller may be liable for buyer's attorney fees when buyer is prevailing party]; *EnPalm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 774-775 & fn. 5 [although trial court may reduce contractual attorney fees based on finding that prevailing party engaged in unnecessary litigation, court may not reduce fees based on its views on merits of case or antipathy toward party].)

Berkley was properly awarded contractual attorney fees as the prevailing party after reversal of the judgment in favor of Specialty on appeal. He is also entitled to file a request for fees in the trial court for defending the instant appeal pursued by Specialty. (See *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc., supra*, 211 Cal.App.4th at pp. 250-251.)

11

DISPOSITION

The judgment is affirmed.  Appellant to pay respondent's costs on appeal.


                                                    HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


NARES, J.